Matthew Resnik, Esq. (SBN 182562)
**SIMON & RESNIK, LLP**
15233 Ventura Blvd., Suite 300
Sherman Oaks, CA 91403
Telephone: (818) 783-6251
Facsimile: (818) 783-6253
matthew@simonresniklaw.com
Attorneys for Plaintiff
ROBERT DE VICO

FILED
CLERK, U.S. DISTRICT COURT

OCT - 2 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

ROBERT DE VICO, an individual,

   Plaintiff,

    vs.

U.S. BANK, N.A., a corporation; GMAC
MORTGAGE U.S.A. CORPORATION, a
corporation; ETS SERVICES, LLC, a
limited liability company; and Does 1 to 10,
Inclusive,

   Defendants.

Case No.: **CV12-8440** - CBM (Ex)

**VERIFIED COMPLAINT FOR:**

1. **WRONGFUL FORECLOSURE;**
2. **SLANDER OF TITLE;**
3. **PRELIMINARY AND PERMANENT INJUNCTION;**
4. **JUDGMENT TO CANCEL INSTRUMENTS;**
5. **QUIET TITLE;**
6. **DECLARATORY RELIEF;**
7. **VIOLATION OF 12 U.S.C. § 2605(E) ("RESPA SECTION 6")**

(DEMAND FOR JURY TRIAL)

Comes now Plaintiff, and demanding trial by jury, complains and alleges as follows:

**PARTIES**

1. Plaintiff ROBERT DE VICO (hereinafter "Plaintiff") now, and at all times relevant to this complaint, is an individual residing in the County of Los Angeles, and the owner and resident of real property commonly known as **3380 Deronda Drive, Los Angeles, CA**

1
**VERIFIED COMPLAINT**

ORIGINAL

PAID

OCT 2 - 2012

Clerk, US District Court
COURT 4612

**90038** (the "subject property"). He is a 49-year old father of five (ages 7, 7, 11, 11 and 13) who has lived in the subject property with his disabled partner of 10 years, Pamela Dickerson, and his children. The subject property is plaintiff's home, the product of his life's work, his children's inheritance, and the house where his first son was born.

2.      Upon information and belief, Defendant GMAC MORTGAGE U.S.A. CORPORATION ("GMAC"), is a corporation organized and existing under the laws of the United States of America with its principal place of business in Minnesota, doing business in the State of California, and upon information and belief, is the parent company of GMAC MORTGAGE, LLC, the servicer on the subject loan.

3.      Upon information and belief, Defendant U.S. BANK, N.A. ("U.S. BANK"), is a corporation organized and existing under the laws of the United States of America with its principal place of business in New York, doing business in the State of California, and is the parent company of U.S. BANK, N.A. AS TRUSTEE FOR RFMSI 2005S9 (the "TRUST").

4.      Upon information and belief, Defendant ETS SERVICES, LLC ("ETS") (aka EXECUTIVE TRUSTEE SERVICES, LLC), is a limited liability company organized and existing under the laws of the United States of America with its principal place of business in California, doing business in the State of California. Plaintiff contends that ETS has no monetary stake in the subject loan or property and, therefore, its California resident status does not defeat diversity. Further, plaintiff is not seeking any monetary damages whatsoever against ETS. As a result, plaintiff contends that ETS is a nominal defendant whose status does not defeat diversity.

5.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated herein as a DOE is responsible in some manner, way, form and to some extent for the events and occurrences referred to herein, and for

the damages resulting to Plaintiff.  At such times as Plaintiff learns the true name and capacity of any Defendant named as a DOE herein, Plaintiff will seek leave of court to amend her complaint to identify said Defendant, and include accompanying charging allegations.

## SUBJECT REAL PROPERTY

6.     The real property which is the subject of this action (the "subject property") is a single-family, owner-occupied/primary residence home located at **3380 Deronda Drive, Los Angeles, CA 90038** in the State of California and legally described in **Exhibit A** (Deed of Trust p. 3 of 12).

## VENUE AND JURISDICTION

7.     Venue is proper in this Court, as the subject property is located within its jurisdiction and damages exceed the jurisdictional limit of this Court.  There is subject matter jurisdiction pursuant to plaintiff's claim regarding defendants' Violation of 12 U.S.C. § 2605(E) ("RESPA Section 6").  There is also diversity of citizenship between Plaintiff and Defendants, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00. This court has jurisdiction of the action pursuant to 28 U.S.C. § 1332(a).  Declaratory relief is authorized under 28 U.S.C. § 2210.

## PROCEDURAL HISTORY OF RELATED CASE No. CV-12-03205-MMM

8.     On April 12, 2012, plaintiff filed a related action in this Court (Case No. CV-12-03205-MMM; the Hon. Margaret M. Murrow presiding) against U.S. BANK, N.A., GMAC MORTGAGE, LLC, ETS SERVICE, LLC, and Does 1 through 10.

9.     On April 16, 2012, plaintiff filed an amended complaint, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332.

10.     On September 25, 2012, the Court dismissed plaintiff's lawsuit <u>without</u> prejudice based on a lack of diversity because plaintiff failed to allege that both GMAC MORTGAGE, LLC's and ETS's individual members' domiciles were all in states other than California.

11.     Plaintiff respectfully contends that he has cured these deficiencies as described above.

12.     A trustee's sale is currently scheduled on the subject property for October 3, 2012 at 11:00 am.

### SUMMARY OF THE CASE

13.     Plaintiff alleges that Defendants are attempting to foreclose on his home despite the fact that:

14.     Defendants have absolutely no ownership interest in plaintiff's mortgage loan/promissory note (the "Note")/deed of trust ("DOT")/subject property, much less any proof regarding such ownership, or without even the *color* of legal authority or title, much less actual authority or title, to foreclose;

15.     A Los Angeles County Superior Court judge (unltd. jurisdiction) quieted title in October 2011 to the subject property in plaintiff's name only (case no. BC472483), thereby extinguishing the lien held against it by the original mortgagee/note holder based in significant part on the declaration of a highly respected and sought-after expert witness in the financial/mortgage banking industry.   GMAC, ETS and US Bank were notified of the lawsuit immediately after the filing of the Complaint by T.J. as well as plaintiff (via certified mail) failed to defend themselves, much less to establish their purported standing to foreclose.  For example, in December 2011, plaintiff recorded, filed and served a *Lis Pendens* on  GMAC and U.S. Bank. As a result, plaintiff was granted clear title via a default judgment for quiet title and full reconveyance to plaintiff.

16.     The same mortgagee/note holder thereafter recorded a Full Reconveyance of the subject Deed of Trust into plaintiff's name only;

17.     The subject Deed of Trust and Note were never lawfully transferred due to the fact that the current purported beneficiary thereto is a securitized REMIC trust that closed and whose registration was deactivated by the SEC more than six years ago;

18.     The current purported beneficiary to the subject Deed of Trust only received the Assignment thereof as a result of a fraudulent conveyance by the original mortgagee/note holder. For example, instead of defending itself against plaintiff's quiet title action, T.J. defaulted in October 2011 and purported to transfer the subject loan/DOT on November 29, 2011 by purportedly assigning the DOT to U.S. Bank via nominee beneficiary MERS.  In entering a default judgment and quieting title in the above action, upon information and belief, Judge Segal clearly indicated that the purported assignment was at best improper and at worst illegal;

19.     Defendants have clearly attempted to bifurcate the DOT and Note via (1) this Assignment; as well as (2) the securitization and entering of these instruments into a REMIC trust, thereby converting the Note to securities traded to the public on the open market (as evidenced by a forensic securitization audit).

20.     Specifically, because the DOT and Note are supposed to be inseparable or, at the very least, transferred together on or about the same time, plaintiff contends that the Note was purportedly transferred on or about the same date as the DOT.  In such event, the Note would have transferred six (6) years after the Closing Date of the REMIC trust in violation of its Pooling & Servicing Agreement as well as the applicable IRS Code section governing REMIC trusts.  Alternatively, the instruments were separated, thereby rendering the subject security interest a nullity.  In either case, the Assignment is void.

21.     What is purportedly the only available version of a copy of the Note is riddled with defects and appears to be a fabricated document.  For example, it contains an undated stamp by T.J. as well as an execution by one Judy Faber as a Vice-President of U.S. Bank.  However, Ms. Faber previously testified at her deposition in another matter that she never held this position.  Further, this copy of the Note contains no endorsements, allonges, dates, witnesses or executing officer.  Based on the foregoing, plaintiff contends that this document should be rejected by the Court as evidence that U.S. BANK has any ownership and/or security interest

therein.  In other words, neither U.S. BANK nor any other defendant or entity can show standing to enforce the Note based on this document;

22.     Since this ordeal began, Defendants have engaged in a campaign of harassment and retaliation against plaintiff, **which directly resulted in the break-up of his ten-year domestic partnership,** including retaliatory actions within days of filing legal papers intended to protect his rights as a homeowner with a clear title in his name only.  For example, in November 2011, MERS entirely deleted from its database any record of the subject Assignment of Deed of Trust only eight (8) days after TJ FINANCIAL, INC. ("TJF" or "TJ"), the original lender – indeed, the one and only lender of record in the chain of title -- was served with said quiet title complaint;

23.     During a two-year period between 2010 and 2012, plaintiff sent numerous QWR's and certified letters to GMAC in an attempt to ascertain and identify the true noteholder, lender in due course, true beneficiary to the DOT, and the investor thereto.  At all relevant times, GMAC either failed to respond or did so in such an intentionally vague, oblique and deceptive manner as to constitute a failure to do so – in either event, plaintiff contends RESPA Section 6 was violated;

24.     The breaks in the subject chain of title and other clouds on the title were numerous, often patent and certainly not limited to those described hereinabove.  For example, on July 15, 2011, upon information and belief, GMAC instructed MERS to transfer the subject loan to an "Undisclosed" Investor "#10000002" whose purported interest in the subject property/DOT/Note has never been disclosed, much less recorded.  This purported transfer was executed six (6) days after the Comptroller of the Currency opened a case on the matter (file no. 01751605/GMAC), as did the FTC (case no. 31453267).  It was also reported to the California Attorney General's Mortgage Fraud Strike Force and the SEC; and

25.     Plaintiff contends that Defendants violated Cal. Civil Code section 2923.5 by failing to initiate contact with him to explore alternatives to foreclosure at any time, including at

least 30 days prior to recording the subject Notice of Default. As a result, the NOD is void *ab initio*.

26. Notwithstanding the foregoing, defendants GMAC, U.S. BANK and ETS have created the illusion of valid assignments/transfers of the subject Deed of Trust into a mortgage asset-backed securitized trust in order to unlawfully foreclose on the subject property. To date, no valid perfection of the chain of title on the subject property has ever been produced by defendants, despite multiple requests to do so, including QWR's via certified mail.

27. Plaintiff's lawsuit is the culmination of an exhausting odyssey to ascertain which, if any, of a multitude of entities (including the current beneficiary – a securitized trust that ceased to exist *six* years ago), has standing to receive and retain payments thereon, to declare default in the event of non-payment, and most importantly, to **foreclose on his home**.

28. After exhausting all other attempts to solve the Byzantine maze of his chain of title, and with no other avenue for redress, plaintiff now seeks relief from this Court to determine which, if any entity, is the true and lawful beneficiary and note holder in due course – and what rights, if any, defendants have to claim a secured interest in the DOT and note.

29. Far from attacking the securitization process, plaintiff desires only to have the confusion surrounding his loan status cleared up once and for all. He is not disputing that he owes money on his mortgage obligation; only the amount that he owes. Then and only then will he be finally able to get back to his life, his family and his home in peace. Without the requested relief, even if the trustee's sale does not proceed as scheduled, plaintiff's title will be permanently clouded and his home rendered unmarketable, with multiple entities potentially making unlawful claims against it. Plaintiff has been further prejudiced because he has been forced to hire an attorney at significant expense to save his home through litigation and possibly bankruptcy.

30. Plaintiff is currently in default and **facing immediate foreclosure**, but is – and always has been – ready to cure the default once the entity lawfully entitled to said payments is

ascertained by the Court.  Also, summarize the shady timing of defendants' actions – always within days of plaintiff taking some action, they struck back.

## FACTUAL ALLEGATIONS

### The Origination and Securitization of the Subject Loan and Note

31.     On or about February 1, 2001, Plaintiff purchased the subject property.

32.     On or about November 15, 2005, plaintiff refinanced the subject property with a 30-year, 5.75% loan of $565,000.00 from T.J. FINANCIAL, INC. ("TJF") with a monthly payment of $3,342.19 (principal & interest).  **Exhibit A** (Deed of Trust ("DOT") recorded November 15, 2005; instrument no. 05 2745537; loan no. 2054459).   Identified therein as "Lender" is T.J. FINANCIAL, INC., "Trustee" is INVESTORS TITLE CORP., and "nominee for Lender"/"beneficiary" is MERS.  **TJF has always been the <u>only</u> lender of record.**

33.     Unbeknownst to plaintiff, TJF was merely the mortgage broker and not the actual lender, despite representations to the contrary made to plaintiff by TJF's agents.  Had plaintiff known that TJF intended to securitize his loan, he would have never agreed to accept it.  Plaintiff understood even then that such purported transfers could result in his making mortgage payments to the wrong entity, and his inability to ascertain who was lawfully entitled to receive such payments. Unfortunately, his fears were more than justified – they, in fact, proved to be true.  In any event, after closing the transaction, TJF had nothing further to do with plaintiff's loan. Plaintiff has never made any payments to, nor ever received a statement from TJF.  GMAC thereafter became the servicer, to be replaced on December 7, 2011 by an undisclosed "non-MERS servicer # 9999999" (see below).

34.     On or about the same time, plaintiff executed a promissory note (the "Note") that required plaintiff to make payments "to the order of Lender.  Lender is T.J. FINANCIAL, INC." **Exhibit B**.  The Note states that: "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'. ... [p.1] **Notice of Default**. If I am in default, the Note Holder may send me a written notice telling me that if I do

not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount…. [p. 1]." Id. Thus, the Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not include a servicer who is not the Note Holder.

35.     Consistent with the language of the Note, only the "Lender" is authorized under the DOT to accelerate the loan. The DOT states, **"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant of agreement in this Security Instrument… If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located."** (DOT pages 11-12, paragraph 22) (emphasis in original).

36.     Thus, the terms of plaintiff's DOT and his Note severely limit who has the right to receive payments, accelerate the loan, and foreclose on the underlying security interest (i.e., the subject property). Based on these documents alone, plaintiff has the right to demand and receive proof that any entity purporting to foreclose on his home in fact has such rights. In a recent Southern District Court order denying defendant banks' motion to dismiss, the Court found that plaintiff's claims were viable because he "does not dispute the right to securitize the mortgage, but alleges that as a result of improper procedures, the true owner of his mortgage is unclear. As a result, he has allegedly been paying improper entities an excess amount." *Johnson v. HSBC Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-2091, filed March 19, 2012). This is precisely what plaintiff is alleging in the present action.

### Factual Allegations regarding the TRUST

37.     Plaintiff contends that the purported transfers of the DOT and Note into the TRUST were void because they occurred after the TRUST's Closing Date, thereby rendering these instruments void.

38.     On December 1, 2005, a Pooling & Servicing Agreement ("PSA") was created for the establishment of the TRUST.  According to its terms, on or prior to the **Closing Date** of **December 29, 2005** (but in no event later than ninety (90) days thereafter), any loans and Notes – including plaintiff's loan and Note – would have had to been transferred into the Trust by the date of the **transfer would be void.  Exhibit C** (pp. 1-6 only – plaintiff will produce the balance of the voluminous PSA upon request).  As discussed below, the DOT was purportedly assigned to the TRUST more than **six years after it closed**.  Therefore, plaintiff contends that no such assignment of the DOT or the Note in fact lawfully occurred.

39.     According to the terms of the PSA, the Note had to be properly endorsed by every intervening entity who laid claim to it at any time – which by the nature of the securitization process necessarily consists of no less than three (3) entities: RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC. as Sponsor and Seller; U.S. BANK, N.A. as Trustee; and RESIDENTIAL FUNDING CORPORATION as Master Servicer.  Notably, neither the Issuing Entity, Custodian, nor the Depositor are identified therein.

40.     Regardless of the foregoing, THE TRUST closed on **December 29, 2005**, and according to the PSA, no assets (including plaintiff's loan and Note) could be transferred therein after three months following the closing date in order to comply with IRS Code 860 (governing REMIC trusts).  The TRUST is a REMIC trust, which is designed as a tax shelter.  However, in order to qualify for that status, it must be "static", meaning that loans cannot be transferred in and out beyond the Closing Date.

41.     Finally, in order to be a valid transfer into the TRUST, several transfers of the loan must be made within the TRUST itself in order to be valid: (1) The mortgage lender originates the pool of loans (here, TJF); (2) then it sells the pool to an investment bank or other entity called a sponsor (here, RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.); (3) the sponsor then sells the pool of loans to a special-purpose subsidiary, called the "depositor" that has no other assets or liabilities in order to separate the loans from the sponsor's assets and

liabilities; and (4) then the depositor transfers the loans to a specially created, special-purpose vehicle ("SPV") – i.e., a REMIC trust that holds the loans for the benefit of the investors ("certificate holders").

42.     Without the transfer of the subject loan proceeding exactly as described, the transfer is **void**. *See, e.g., U.S. Bank v. Ibanez*, SJC-10694, 2011 WL 38071 (2011), wherein the Massachusetts Supreme Judicial Court invalidated two foreclosure sales. There, the Court held that in order to foreclose, the bank was required to show an unbroken chain of title from origination to securitization in full compliance with the PSA in order to establish ownership of the mortgage.

43.     Plaintiff contends that this is precisely what happened, i.e., that his loan was not transferred according to the terms of the subject PSA. Indeed, it is impossible to even identify who the custodian and depositor are, much less whether the loan properly passed through their hands. As a result, even aside from the Closing Date, plaintiff contends that his loan was never lawfully transferred into the TRUST. Consequently, U.S. BANK has no legal right to foreclose on plaintiff's home on behalf of the TRUST.

44.     Plaintiff's allegations herein are similar to those in several recent Ninth Circuit cases. In *Schafer v. CitiMortgage, Inc.*, 2011 WL 2437267 (**C.D.** Cal. 2011; order denying in part MTD filed June 15, 2011), this Court denied defendants' motion to dismiss plaintiff's declaratory relief claim, which was based on alleged improper transfer due to alleged fraud in the execution of documents. Similarly, in *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL 5826016 (E.D. Cal. 2011), the Court allowed plaintiffs' claims to proceed when plaintiffs alleged that the assignment was executed **after the closing date of the securities pool**, "giving rise to a plausible inference that at least some part of the recorded assignment was fabricated." *Johnson v. HSBC Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-2091, order denying banks' motion to dismiss ("MTD") filed March 19, 2012).

45.     It bears repeating that all this was done without plaintiff's knowledge or permission as none of this was disclosed at the time of the writing of the loan.  He would never have agreed to jeopardize the title to his home had he known what was intended for the DOT and Note – i.e., that the instruments would be securitized.

46.     It is anticipated that defendants will argue that plaintiff has no right to relief based on breaches of the PSA simply because he was not a party thereto.  However, the *Johnson* court "[found] that Plaintiff is not categorically excluded from making claims based on allegations surrounding the loan's securitization. … Plaintiff here alleges both violations of the PSA and relevant law. [The bank] has not sufficiently demonstrated that violations of law associated with the loan's securitization can go unchecked because Plaintiff is not a party to the PSA." *Johnson v. HSBC Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-2091, filed March 19, 2012).

47.     **On January 26, 2006, the TRUST's registration was terminated by the SEC. It cannot be disputed that from that point the TRUST ceased to exist.  Exhibit J (pp.3-5).**

48.     In any event, plaintiff is not claiming he is somehow a party or beneficiary to the PSA; only that because his loan was never lawfully and properly securitized (i.e., transferred into the TRUST), defendants are estopped from claiming any right or interest in the DOT or Note that purportedly vested in them as a result of said purported transfer.

### Plaintiff's Attempts to Identify the Holder in Due Course

49.     As a result of these problems, which to date have yet to be resolved by GMAC, and because of broad warnings in the media about fraudulent assignments and foreclosures relating thereto, plaintiff first contacted GMAC to voice his concerns.

50.     Specifically, on or about October 1, 2010, plaintiff called GMAC to inquire as to whom was the true beneficiary/note holder in due course on the subject loan.   He received no response.

51.     In or about November 1, 2010, plaintiff made his last payment on the loan.  He offered to continue making payments if GMAC would identify the holder in due course but

GMAC could provide no substantive information.  But for this issue, plaintiff would have continued making his payments.  As on the date he stopped making payments, plaintiff had always been current and almost always timely in making his payments, and, in fact, usually paid a month ahead.  He made approximately 60 months of payments at $3,342.19 or a total of $200,531.40.

52.     On December 6, 2010, plaintiff sent a certified letter to GMAC demanding it identify of the true beneficiary/note holder in due course on the subject loan.  He informed GMAC that he would not continue to make payments thereon until he knew exactly which entity was lawfully entitled to receive said payments.  GMAC failed to adequately respond or to provide any acceptable proof of its standing.  (Between that date and December 22, 2011, plaintiff sent GMAC identical Qualified Written Requests via certified mail on at least **eight** occasions.  Plaintiff never received a substantive response.)

53.     On January 6, 2011, plaintiff sent a second certified letter to GMAC, warning GMAC that it was required as a matter of law to show that it was entitled to receive his loan payments and that it otherwise had standing, including to foreclose on the subject property.  Therein, he also demanded that GMAC identify the true beneficiary/note holder/lender in due course by producing a valid Deed of Trust and the original promissory note.  As always, GMAC failed to adequately respond.

54.     In June 2011, plaintiff sent a request to U.S. BANK for (1) the identification of the true beneficiary/note holder/lender in due course; and (2) to prove its standing re the subject loan.  He received no substantive response.

55.     At all times, defendants have failed to verify the debt and amount owed on plaintiff's loan, or to identify the holder in due course of the DOT and Note.  Plaintiff alleges that Defendants have not properly credited payments he made on the mortgage; have incorrectly calculated the interest thereon; and at all times knew that Plaintiff was paying incorrect amounts.  To quote the *Johnson* court, "the allegations are sufficient to state a claim at the pleading stage—

1   Plaintiff has specifically alleged that he sought certain information, [the bank] denied him his

2   statutorily required information, and the failure to receive that information caused him to pay

3   more than was necessary on his loan and to incur costs in repairing his credit." *Johnson v. HSBC*

4   *Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-2091, March 19, 2012). This is precisely what plaintiff

5   alleges herein.

### The Fraudulent Transfers of Plaintiff's Loan

7        56.     On October 28, 2011, Tim Lee, President/CEO of TJF sent an e-mail to plaintiff

8   confirming that TJF had been "paid off" and stated that he would "inform his investor" about the

9   fact that plaintiff was no longer indebted to TJF. He also wrote, "I don't know why that investor

10  didn't record the assignment through all the years." Plaintiff asked him to provide the name of

11  his investor but never heard from Mr. Lee again about this issue. TJF never disclosed this

12  information to plaintiff.

13       57.     On October 31, 2011, plaintiff filed a Quiet Title action against TJF at the Stanley

14  Mosk Courthouse located at 111 N. Hill Street in downtown (Los Angeles Superior Court case

15  no. BC472483), whereby he demanded that TJF remove its lien against the subject property from

16  the county recorder's office or to otherwise prove standing.

17       58.     That same day, October 31, 2011, plaintiff visited Mr. Lee's office in Monrovia,

18  CA. During a brief conversation, Mr. Lee, in front of plaintiff's witness and process server,

19  confirmed that according to his records, plaintiff was not in debt to TJF and that the loan had,

20  from his "point of view", been "disbursed" (i.e., paid off)

21       59.     As soon as it learned of the lawsuit, TJF and/or GMAC and/or ETS had the

22  subject loan removed from the MERS system and transferred it to a new non-MERS servicer and

23  a still-unidentified investor. Plaintiff contends that this was a blatant attempt on defendants' part

24  to distance themselves from the loan and thereby avoid litigation, discovery and potential civil

25  liability – in other words, said purported transfer was a **fraudulent conveyance**.

60. On November 30, 2011, TJF failed to respond to plaintiff's lawsuit, much less show standing (despite being the only lender of record), and thereby defaulted.

61. Only **three days** after TJF defaulted, on December 2, 2011, in the above-described **fraudulent conveyance,** MERS – at the direction of TJF -- purported to assign the subject loan to U.S. BANK, N.A. AS TRUSTEE FOR RFMSI 2005S9. **Exhibit D** (Assignment of the DOT recorded December 12, 2011; instrument no. 20111672086). This was the first recorded assignment since plaintiff obtained the loan on or about November 15, 2005.

62. Plaintiff contends that this was a void and fraudulent transfer as the TRUST had **closed approximately six (6) years earlier** and was therefore a non-existent entity at the time of the purported Assignment, thereby voiding said transfer. (GMAC remained as the servicer on the subject loan.) Plaintiff contends that the Assignment therefore is **void** *ab initio*, which constitutes a break in the chain of title and a separation of the deed of the trust from the note, which results in a nullity of both documents.

63. The United States Supreme Court held in *Carpenter v. Longan*, 83 U.S. 16 Wall. 271 (1872), that "the Deed of Trust follows the Promissory note. Where the promissory note goes, the Deed of Trust must follow," and that separating the two instruments results in a nullity. Plaintiff contends the original promissory note is gone, and was never properly or lawfully endorsed to defendants. In other words, U.S. BANK has no legal right to record any documents whatsoever, much less any NOD or Notice of Trustee's Sale, much less to actually conduct a trustee's sale (and record a Deed Upon Trustee's Sale).

64. Further, plaintiff also alleges that Tyrone Thorogood, the signatory of the Assignment, was not in fact the "Assistant Secretary" for MERS and lacked the requisite corporate and legal authority to effect an actual 'assignment' of Plaintiff's Note and DOT. Specifically, Mr. Thorogood does not appear in the MERS database as an officer or in any other capacity. Plaintiff therefore contends that MERS had no knowledge of the assignment, that Mr. Thorogood was never appointed to "Assistant Secretary" (an executive position) by MERS'

board of directors, and thus he had no authority to make the assignment.  Nor does he appear as a corporate officer (or any other capacity) on MERS website.

65.     In an identical case, *Johnson*, the Court found that plaintiff sufficiently alleged facts "showing the Assignment was defective, invalid, or somehow voidable. ... [T]he complaint states that MERS had no knowledge of the assignment, that Treva Moreland was never appointed to "assistant secretary" by the MERS' board of directors, and thus there was no authority to make the assignment." *Johnson v. HSBC Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-2091, March 19, 2012); *see also In Kingman Holdings, LLC v. CitiMortgage, Inc.*, 2011 WL 1883829 (E.D. Tex. 2011), where the court assessed a fraud claim against CitiMortgage in which the plaintiff alleged that MERS' appointment of an assistant secretary ("Blackstun," who later made the assignment) was invalid because it was not approved by the board of directors. The court upheld the fraud claim, finding that Plaintiff's allegations were plausible and that if Blackstun had no authority to bind MERS, then MERS filed a fraudulent document after he executed the assignment. *Id.*

66.     Based on the foregoing, plaintiff contends that defendants recorded a fabricated assignment of the loan because the assignment was executed after the closing date of the TRUST, and was executed by an individual who had no lawful authority to do so.  This gives rise to a plausible inference of fabrication.  (Indeed, defendants' conduct in recording the fabricated assignment is a **criminal violation** of Cal. Penal Code section 532(f)(a)(4) (mortgage fraud results from the recording any document relating to a mortgage loan transaction that the person "knows to contain a deliberate misstatement, misrepresentation or omission").)

67.     Finally, under California law and the terms of the DOT itself, the lender must be the party to appoint the successor trustee, and U.S. BANK was not the lender.

68.     Only **six days** after TJF defaulted, and three days after the fraudulent assignment was recorded, on December 5, 2011, U.S. BANK purported to substitute in ETS as trustee. **Exhibit E** (Substitution of Trustee ("SOT") recorded December 14, 2011; instrument no.

20111686437).   However, because the TRUST no longer existed at that time, and because the loan was never properly and lawfully transferred into the TRUST, plaintiff contends that the SOT is void *ab initio*, and therefore **ETS was never lawfully substituted in as trustee**.

69.   Only **eight days** after TJF defaulted, on December 7, 2011, the subject loan was transferred to "Non-MERS Status"; "New Servicer: 9999999 Non-MERS Member."

70.   On December 12, 2011, a Request for Entry of Default was entered by the Court Clerk. Plaintiff served TJF that same day with a Notice of Default.

71.   Only **two days** later, on December 14, 2011, U.S. BANK and ETS, appointed trustee for TJF, recorded a Notice of Default, **alleging** arrearages of $68,734.99 as of December 31, 2011. **Exhibit F** (document # 11-1686438; TS#: CA1100046646).

72.   On December 15, 2011, plaintiff received a FedEx letter from JOYCELYN LEE, Vice-President of TJF informing him, in relevant part, that the loan was an electronically registered MERS loan.   In fact, on that date it was no longer a MERS loan, having been transferred out of the MERS system.   Plaintiff's reasonable confusion over the identity of the holder in due course continued unabated.

73.   Plaintiff contends that the above-described purported transfers were part of a string of fraudulent conveyances, and a flagrant abuse of the California foreclosure statutory framework, wherein after being sued by plaintiff to quiet title, and after plaintiff's exhaustive attempts to seek the information identified above, defendants sought to avoid potential civil liability by transferring the loan

74.   Finally, plaintiff contends that the timing of the recording of the Assignment and the SOT, as well as the removal of the loan from the MERS database is, at minimum, highly suspicious and telling, and constituted fraudulent conveyances whereby defendants sought to avoid litigation, discovery and potential civil liability.   As such, said instruments should be cancelled, including the assignment.

///

**Allegations regarding Defendants' Unlawful Foreclosure Proceedings**

75.     On December 14, 2011, U.S. BANK and ETS recorded a Notice of Default ("NOD"), alleging arrearages of $68,734.99 as of December 31, 2011. **Exhibit F** (document # 11-1686438; TS#: CA1100046646).

76.     At the bottom of p.2 of the NOD is a so-called "2923.5 declaration" executed by ETS' "TRUSTEE [*sic*] SALE OFFICER" JENNIFER ESTEBAN, who purported to have complied with said statute by either contacting or attempting to contact plaintiff at least 30 days prior to recording the NOD to explore alternatives to foreclosure (i.e., no later than November 14, 2011).

77.     California <u>Civil Code</u> section 2923.5 provides that a mortgagee, beneficiary, or authorized agent ("lender") must contact—or exercise due diligence in attempting to contact—the borrower in person or by telephone thirty days prior to filing a notice of default "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a). During the initial contact, the lender must advise the borrower that the borrower has the right to request a subsequent meeting and, if the borrower so requests, the lender must schedule a subsequent meeting within 14 days. Id. § 2923.5(a)(2).

78.     Absent compliance with Section 2923.5, there can be no valid notice of default. *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223 (2010). Plaintiff contends that Defendants violated Section 2923.5 by failing to contact him in person or by phone to assess his financial situation and explore options available to Plaintiff to avoid foreclosure before Defendant filed the Notice of Default. Plaintiff also contends that GMAC—during contact initiated by Plaintiff—failed to inform him that he could request a subsequent meeting to be held within 14 days.

79.     At no time has anyone from GMAC, ETS or any other entity ever attempted to contact, much less have actual, productive contact with plaintiff to explore alternatives to foreclosure as required thereunder. Plaintiff has never received such a call from anyone identifying themselves as an employee or agent of ETS. He has an answering machine that is

never turned off and captures & records all calls, and he has never received such a message. Nor would he ever expect such contact because ETS is the trustee and, therefore, has no role in servicing his loan. In any event, Plaintiff makes the same allegations against GMAC.

80.     Defendants are anticipated to argue that Ms. Esteban was merely passing on information provided to her from GMAC. However, plaintiff contends that because the "declaration" is not based on her own personal knowledge, she really has no idea whether or not section 2923.5 was satisfied. As a result, the NOD is void *ab initio*.

81.     In doing so, U.S. BANK on behalf of the TRUST is purporting to be the beneficiary to the DOT. However, because the TRUST was no longer in existence at that time, U.S. BANK had no legal authority to record the NOD. Plaintiff contends that as a result, TJF would remain as the true beneficiary, lender and note holder.

82.     In *Schafer*, as here, this Court denied in part the bank's MTD, finding that plaintiff's claims were viable "that the Notice of Default is false because it did not contain the correct amount allegedly owed on the loan because the true amount is unknown or because it includes illegal fees." *Schafer v. CitiMortgage, Inc.*, 2011 WL 2437267 (**C.D.** Cal. 2011; order denying in part MTD filed June 15, 2011).

83.     On December 19, 2011, plaintiff responded to ETS with a QWR by certified mail but received no adequate response. Instead, ETS provided him a copy of the Note but without any date stamps, notary signature, or allonges. The note was signed by JUDY FABER who, in being deposed in another civil matter, admitted that she was never "Vice President" thereof. Her stamp has been ruled void in multiple cases. Ms. Faber is apparently a notorious robo-signer as discussed above.

84.     On December 23, 2011, plaintiff recorded a *Lis Pendens* against the subject property with the Los Angeles County Recorder's Office (document # 20111751871).

85.     On February 27, 2012, plaintiff called ETS and spoke to "Adam", a supervisor, and subsequently with Liz Yeranozian, Manager of Financial Operations, ETS, and by fax,

warning ETS about the unlawful assignment of the subject DOT. He also pointed out that the MIN # on the assignment was invalid, thereby resulting in yet another irregularity. Finally, he requested that ETS remove the assignment from the county recorder's records. To date, ETS has failed to do so and instead moves forward with an illegal trustee's sale, thereby causing much grief and consternation to plaintiff, his partner and five minor children.

86.     On March 13, 2012, Judge Segal granted plaintiff's request for default and entered a default judgment against TJF, quieting title in plaintiff's name, and ordering a Full Reconveyance by TJF to plaintiff. **Exhibit G.**

87.     Only *one day* later, on March 14, 2012, U.S. BANK and ETS posted an unrecorded Notice of Trustee's Sale on plaintiff's door (see below).

88.     On March 15, 2012, plaintiff recorded the default judgment (instrument no. 20120410834).

89.     On March 16, 2012, U.S. BANK and ETS recorded a Notice of Trustee's Sale ("NOTS"), identifying a sale date/time of **April 9, 2012** at 11:00 am, and total outstanding balance of $589,648.46. **Exhibit H** (document # 12-0415992). Because the NOD is void *ab initio*, plaintiff contends so, too, is the NOTS.

90.     Plaintiff contends that as a result of the fraudulent conveyance and void transfer of the Assignment to the TRUST, U.S. BANK was not lawfully authorized to record the NOTS on its behalf. As a result, the NOTS is void *ab initio*.

91.     On March 19, 2012, CEO Tim Lee, on behalf of TJF, executed, notarized and recorded a Full Reconveyance, thereby extinguishing plaintiff's purported debt and citing Judge Segal's order. **Exhibit I** (document # 20120426660). **Thus, as of that date, TJF relinquished all claims to the subject loan and property.** (Notably, Jocelyn Lee was shocked when plaintiff arrived with the order, exclaiming, "But you're being foreclosed on!" and made other comments that gave him the distinct impression that she believed the fraudulent conveyance had absolved TJF of any obligations relating thereto.)

92.     Plaintiff contends that none of the entities identified above is the owner, holder, or beneficiary of the Promissory Note or DOT, and therefore was never legally entitled to receive payments on the subject loan.  Nor do any have the right to foreclose on the subject property. Plaintiff also alleges that defendants failed to properly record their claims of ownership in the Subject Property, further evidencing said lack of ownership.  As a result, plaintiff contends that there has been a break in the chain of title.  As the trustor on the DOT, he has the right to know which if any of said entities are entitled to receive and retain payments on the subject loan. Plaintiff justifiably fears that he will pay the wrong entity.

93.     A power of sale is conferred by the mortgage under Cal. Civ. Code §2924.  Under the comprehensive California statutory foreclosure framework (Civil Code sections 2924 through 2924k4) and the language of the DOT, neither the servicer nor an investor has the right to foreclose on the subject DOT – only the beneficiary to the DOT or its trustee (acting solely at the beneficiary's direction) can do so.

94.     Plaintiff is currently in default.  At this time, plaintiff is able, willing and ready to cure the default.  However, plaintiff is confused and uncertain as to which of the above entities he should make the payments.  Plaintiff contends that defendants should provide evidence of a proper chain of title, including but not limited to a properly endorsed promissory note and assignment of the DOT.  Plaintiff is perturbed at the defendants' desire to avoid any accounting and demands that said evidence be provided immediately.

95.     The gravamen of plaintiff's complaint in regards to the Subject Property is that Defendants intend to conduct a foreclosure sale of said property without any legal authority or standing to do so, and in violation of state laws which were specifically enacted to protect consumers such as Plaintiff from the type of unlawful conduct in which Defendants engaged which are detailed herein by failing to follow the procedure prescribed by such laws to foreclose property.  Plaintiff has prosecuted the action previously with the Defendants full knowledge. Defendant refused to cooperate or acknowledge there was ongoing litigation and should not benefit from its negligence.

96.     Plaintiff contends that none of the defendants is the true owner, holder, or beneficiary of the Promissory Note or DOT, and therefore are not and never were legally entitled to receive payments on the subject loan.  Nor do they have the right to foreclose on the Subject Property.  Plaintiff also alleges that defendants failed to properly record their claim of ownership in the Subject Property, further evidencing their lack of ownership.  As a result, plaintiff contends that there has been a break in the chain of title such that any trustee's sale is void *ab initio*, including as to all purported bonafide purchasers for value.

97.     Plaintiff does not dispute the right to securitize the mortgage, but alleges that as a result of improper procedures, the true owner of his loan is unclear.  As a result, he has been paying improper entities an excess amount.

98.     Plaintiff contends that the tender requirement does not apply to this case because Plaintiff challenges the beneficial interest held by Defendants.

### FIRST CAUSE OF ACTION
### WRONGFUL FORECLOSURE
### (Against All Defendants)

99.     Plaintiff realleges and incorporates the allegations by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

100.     Plaintiff is informed and believes and thereon alleges that after  the origination and funding of the subject loan, it was sold or transferred to investors or other entities and that Defendants did not own the loans or the corresponding notes at the time of the foreclosure sale. Accordingly, none of the Defendants in this action have the right to declare default, causes Notices of Default to be issued or recorded, or foreclose on plaintiff's home.  None of the Defendants in this action is the note holder or a beneficiary of the subject loan.

101.     Plaintiff further alleges on information and belief that none of the Defendants in this action were beneficiaries or representatives of the true beneficiary.  That is, none of them were assigned the Note and/or DOT executed by plaintiff.  Also Defendants have the authority to execute such documents.

102.   In sum, Defendants are engaging in a wrongful and unlawful foreclosure of the subject property in that Defendants do not have the legal authority to foreclose on the subject property.

103.   As a result of the above-described wrongful conduct by Defendants, Plaintiff will lose his home to foreclose and thereby suffer damages in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**
**SLANDER OF TITLE**
**(Against All Defendants)**

104.   Plaintiff realleges and incorporates the allegations by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

105.   Defendants, purportedly but falsely acting either as (a) the trustee, (b) the agent of the beneficiary of the DOT, (c) as the Note Holder, and/or (4) the actual beneficiary to the DOT, wrongfully and without privilege, caused a NOD to be recorded against the subject property.

106.   None of the Defendants, whether jointly or severally, is a trustee, beneficiary or assignee of any beneficiary of any DOT recorded against the subject property.  Accordingly, they are anticipated to wrongfully cause the recording of a Notice of Trustee's Sale, and, following a trustee's sale, a Deed Upon Trustee's Sale.

107.   By doing the acts described above, Defendants will have slandered plaintiff's title to the subject property.

108.   In that the conduct and acts of Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conducts and acts were not privileged.

109.   As a result of the above-described wrongful conduct by Defendants, Plaintiff will lose his home to foreclose and thereby suffer damages in an amount according to proof at trial.

///

## THIRD CAUSE OF ACTION
### PRELIMINARY AND PERMANENT INJUNCTION
### (Against All Defendants)

110.   Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

111.   As stated above, defendants are anticipated to wrongfully and unlawfully institute and prosecute a foreclosure against Plaintiff's home because none of the Defendants have the right to do so under the subject DOT.

112.   Said foreclosure will be based on Defendants' false assertion that they are entitled to do so.

113.   Further, the TRUST has no legal right to foreclose on the subject property because it is not an existing entity at this time and at the time the subject DOT was purportedly transferred to the TRUST via recording at the County Recorder's Office, much less when the NOD was recorded.

114.   Specifically, Plaintiff is informed and believes and therefore alleges that after the origination and funding of the Subject Loan, it was sold or transferred to investors or other entities and that defendants did not own the loan or the corresponding note at any relevant time, including the date the Assignment of the DOT was recorded, much less when the NOD will be recorded.   Accordingly, none of the Defendants in this action has the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiff's interest in the Subject Property.   None of the Defendants in this action will be the note holder or a beneficiary of Plaintiff's Loan at the time of foreclosure.

115.   Plaintiff is informed and believes and therefore alleges that none of the Defendants in this action are beneficiaries or representatives of the beneficiary.   That is, none of them were assigned the Note and/or DOT executed by Plaintiff.   Consequently, all subject recorded documents are invalid and void.

24
**VERIFIED COMPLAINT**

116.   Consequently, Defendants intend to engage in a wrongful foreclosure of the Subject Property in that Defendants did not have the legal authority to foreclose on the Subject Property.

117.   By reason of the wrongful and unlawful foreclosure, Plaintiff will sustain great and irreparable injury because he will permanently lose his home, and it will be impossible for Plaintiff to obtain adequate relief by way of money damages because of the unique nature of real property and, therefore, is without an adequate remedy at law.

118.   Plaintiff will have sustained damages in excess of the jurisdictional limit of this Court, and, if an injunction is not granted and defendants sell the subject property at a trustee's sale (or thereafter) and evict plaintiff therefrom, she will sustain further damages in an amount to be determined at trial.  Plaintiff will, therefore, seek leave of the Court to amend his Complaint to state the amounts thereof when the same have been ascertained.

### FOURTH CAUSE OF ACTION
### JUDGMENT TO CANCEL INSTRUMENTS
### (Against All Defendants)

119.   Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

120.   Defendants claim an estate or interest in the subject property described hereinabove adverse to that of Plaintiff's, but Defendants' claims are without any right because defendants have no estate, right, title, or interest in the real property.

121.   The claims of defendants are based on the above-identified instruments, including the Assignment of the DOT, the SOT, the NOD and NOTS, are all void *ab* initio for the foregoing reasons, including but not limited to the fact the Assignment was the result of fraudulent conveyances, and that the recording of said instruments violated the California foreclosure statutory framework, Cal. Civ. Code section 2924, et seq.

**VERIFIED COMPLAINT**

122.    Although the instruments appear valid on their face, they are invalid and void or voidable and of no force or effect regarding Plaintiff's interest in the subject property for the reasons set forth hereinabove.

123.    The estate or interest in the subject property claimed by defendants, purportedly based upon a trustee's deed, strips Plaintiff's title, interest and equity in the subject property, restricts Plaintiff's full use and enjoyment of the real property, and hinders Plaintiff's right to unrestricted alienation of it.  If the trustee's deed is not delivered and canceled, there is an absolute certainty that Plaintiff will suffer serious and irreparable injury.

### FIFTH CAUSE OF ACTION
### QUIET TITLE
#### (Against All Defendants)

124.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

125.    Plaintiff seeks to quiet title against the ownership claim of defendants as purported by the trustee's deed upon the sale because defendants' claim is without any right and defendants have no right, title, estate, lien, or interest in the subject property.  **3380 Deronda Drive, Los Angeles, CA 90038** in the State of California and legally described in **Exhibit A** (p. 3 of 12).

126.    Plaintiff names as defendants in this action all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the subject property adverse to Plaintiff's title, or (b) any cloud on Plaintiff's title to the property.  The claims of each unknown defendant are without any right, and these defendants have no right, title, estate, lien, or interest in the subject property.

127.    Plaintiff hereby offers to tender any and all amounts lawfully due to defendants, if any, as according to proof a default judgment has been entered in Plaintiffs favor previously. .

128. Plaintiff desires and is entitled to a judicial declaration quieting title in Plaintiff's favor as of the day before the Trustee's Sale, and restoring possession to Plaintiff.

## SIXTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Against All Defendants)

129. Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

130. An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties under the subject DOT and Defendants' authority to conduct a foreclosure sale against the subject property.

131. Plaintiff contends that as a result of the Defendants' lack of legal authority identified hereinabove, none of the Defendants have the right to foreclose on the subject DOT, that none had the right to record the Assignment, SOT, NOD or NOTS, and that if they record a Deed Upon Trustee's Sale, said instruments will be void. Defendants are expected to claim that they do have such right and are entitled to foreclose based on the subject DOT and valid Assignment, and that Defendants will have followed all necessary statutory procedures.

132. Plaintiff therefore desires a judicial determination of the parties' rights and duties, and a declaration as to whether Defendants have a duty to cease any and all foreclosure activities until it is determined whether Defendants have a right to foreclosure based on their status as lawful beneficiary to the DOT.

133. A judicial determination is needed because Defendants are anticipated to immediately foreclose on the subject property, which will prevent plaintiff from obtaining another mortgage.

///

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF 12 U.S.C. § 2605(E) ("RESPA SECTION 6")**
**(Against All Defendants)**

134.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

135.    Plaintiff contends that GMAC violated said statute which holds that if the servicer fails to comply with the "qualified written request", the borrower is entitled to actual damages, as well as up to $1,000 of additional damages if there is a pattern of noncompliance, plus costs and attorneys fees.

136.    As discussed above, GMAC either failed to respond or to adequately respond to plaintiff's numerous QWR's, much less within the requisite 20 business days.  The servicer then has 60 business days (from the date of the request) to take action on the request -- to either provide a written notification that the error has been corrected, or provide a written explanation as to why the servicer believes the account is correct. Either way, the servicer has to provide the name and telephone number of a person with whom the borrower can discuss the matter.

137.    A Servicing Transfer Statement is required if the loan servicer sells or assigns the servicing rights to a borrower's loan to another loan servicer. Generally, the loan servicer must notify the borrower 15 days before the effective date of the loan transfer. As long as the borrower makes a timely payment to the old servicer within 60 days of the loan transfer, the borrower cannot be penalized. The notice must include the name and address of the new servicer, toll-free telephone numbers, and the date the new servicer will begin accepting payments.

138.    Plaintiff claims that GMAC failed to comply with said statute in all relevant respects.

139.    Individuals have one (1) year to bring a private law suit to enforce violations of Section 8 or 9. A person may bring an action for violations of Section 6 within three years in any

1   federal district court in the district in which the property is located or where the violation is

2   alleged to have occurred.

3   **<u>PRAYER FOR RELIEF</u>**

4           WHEREFORE, Plaintiff prays for judgment against Defendants as follows (but

5   not for damages against ETS):

6           a. For actual damages according to proof;

7           b. For compensatory damages as permitted by law, including restitution;

8           c. For consequential damages as permitted by law;

9           d. For statutory damages as permitted by law;

10          e. For equitable relief, including restitution;

11          f. For reasonable attorneys' fees and costs; and

12          g. For such other and further relief as this Court deems just and proper.

13  Dated: Oct. 1, 2012                    **SIMON & RESNIK, LLP**

14

15                                         By: _____
                                              Matthew Resnik, Esq.
16                                            Attorneys for Plaintiff
                                              ROBERT DE VICO
17

18

19

20

21

22

23

24

25

Exhibit "A"

This page is part of your document - DO NOT DISCARD

05 2745537

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**11/15/05 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

FEE   FEE $ 37⁰⁰JJ
DAF $ 2⁰⁰
C-20

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

11/15/05

UNITED TITLE COMPANY/L.A.

After Recording Return To:
T.J. FINANCIAL, INC.
181 W. HUNTINGTON DR. #108
MONROVIA, CA 91016

05 2745537

LOAN NO. 2054459

1051074 6.2

MIN: 100046120544590003                                    [Space Above This Line For Recording Data]

## DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **November 3, 2005,** together with all Riders to this document.

(B) "Borrower" is **ROBERT DE VICO, AN UNMARRIED MAN.**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is **T.J. FINANCIAL, INC.** Lender is **A CALIFORNIA CORPORATION,** organized and existing under the laws of CALIFORNIA. Lender's address is
        **181 W. HUNTINGTON DR. #108, MONROVIA, CA 91016.**

(D) "Trustee" is **INVESTORS TITLE CORPORATION, A CALIFORNIA CORPORATION**
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as herein after defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O.Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(E) "Note" means the promissory note signed by Borrower and dated **November 3, 2005.** The Note states that Borrower owes Lender
**FIVE HUNDRED SIXTY FIVE THOUSAND AND 00/100*****
Dollars (U.S. $ **565,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2035.**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider                    ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider       ☐ Graduated Payment Rider
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider.
☐ Other(s) [specify]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01 *(page 1 of 11 pages)*
*2054459*

11/15/05

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii)the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the county of     **LOS ANGELES**

[Name of Recording Jurisdiction]

THE SOUTHWESTERLY 22 FEET, MEASURED AT RIGHT ANGLES, OF LOT 8, AND ALL OF LOT 7, BOTH IN BLOCK 19 OF TRACT NO. 6450, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83 PAGES 31 THROUGH 40 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHWESTERLY 20 FEET, MEASURED AT RIGHT ANGLES, OF SAID LOT 7.

APN: 5581-025-008

which currently has the address of    **3380 DERONDA DRIVE**

[Street]

**LOS ANGELES (HOLLYWOOD AREA)**                , California    **90068**        ("Property Address"):

[City]                                              [Zip Code]

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01 *(page 2 of 11 pages)*

**\*2054459\***

**05 2745537**

11/15/05

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded, and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

ROBERT DE VICO

_____          _____

_____          _____

---

[Space Below This Line for Acknowledgment]

State of California                     County ss: LOS ANGELES

On   11-07-2005   Before me the undersigned,   AH-LAY TIOW, A NOTARY PUBLIC

personally appeared   ROBERT DE VICO,   ,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.          Signature _____(seal)
(This area for official notarial seal)

AH-LAY TIOW
COMM. # 1422948
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JULY 5, 2007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3005 1/01 *(page 11 of 11 pages)*

*2054459*

05  2745537

Exhibit "B"

Identifier:7440457893        Type:NOTEN

Copy of Note from date
7440457893
of origination
or as provided at transfer
of servicing

10263993

**NOTE**

LOAN NO.2054459

November 3, 2005                        MONROVIA           CALIFORNIA
[Date]                                  [City]             [State]

3380 DERONDA DRIVE, LOS ANGELES (HOLLYWOOD AREA), CA 90068
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **565,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **T. J. FINANCIAL, INC., A CALIFORNIA CORPORATION**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.875%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

(A) **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **January, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2035,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **181 W. HUNTINGTON DR. #108, MONROVIA, CA 91016** or at a different place if required by the Note Holder.

(B) **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **3,342.19**.

4. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01 (page 1 of 3 pages)

**2054459**

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____     -Borrower        _____ -Borrower
ROBERT DE VICO

_____     -Borrower        _____ -Borrower

_____     -Borrower        _____ -Borrower

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By *Judy Faber*
Judy Faber, Vice President

**NO DATE!**
**NO ALLONGE!**

PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE
T.J. FINANCIAL, INC.
A CALIFORNIA CORPORATION
BY: _____
TIEN-I LEE - PRESIDENT

**NO DATE**
~~ITO~~

2054459

Exhibit "C"



Home / Document ID: 1857530

# Pooling and Servicing Agreement

**Entities:** Cede & Co.; JPMorgan Chase Bank; Federal National Mortgage Association; Freddie Mac; McGraw-Hill Companies Inc.; Bank One, NA; First National Bank of Chicago; U.S. Bank, NA; Rfmsi Series 2005-S9 Trust

**Date:** 2006

**ID:** #1857530

[ Download Full Document ]

**Start of Document**

```
{DOCUMENT}
{TYPE}EX-10
{SEQUENCE}2
{FILENAME}s9ssfinal.txt
{DESCRIPTION}EX 10.1 SERIES SUPPLEMENT
{TEXT}
                RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.,

                              Company,

                    RESIDENTIAL FUNDING CORPORATION,

                            Master Servicer,

                                 and

                    U.S. BANK NATIONAL ASSOCIATION,

                               Trustee

                          SERIES SUPPLEMENT,

                    DATED AS OF DECEMBER 1, 2005

                                 TO

                          STANDARD TERMS OF

                    POOLING AND SERVICING AGREEMENT

                      DATED AS OF MAY 1, 2005

                  Mortgage Pass-Through Certificates

                          Series 2005-S9


{PAGE}

{TABLE}
{CAPTION}
```

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| {S} |  | {C} |
| ARTICLE I. | DEFINITIONS.................................................. | 4 |
|  | Section 1.01   Definitions................................. | 4 |
|  | Section 1.02   Use of Words and Phrases.................... | 17 |
|  | Section 1.03   Determination of LIBOR...................... | 17 |
| ARTICLE II | ARTICLE II CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES.............................................. | 19 |
|  | Section 2.01   Conveyance of Mortgage Loans................ | 19 |
|  | Section 2.02   Acceptance by Trustee. (See Section 2.02 of the Standard Terms)................................................ | 19 |
|  | Section 2.03   Representations, Warranties and Covenants of the Master Servicer and the Company....................... | 19 |
|  | Section 2.04   Representations and Warranties of Sellers. (See Section 2.04 of the Standard Terms)....................... | 22 |
|  | Section 2.05   Execution and Authentication of Class R-I Certificates........... | 22 |
|  | Section 2.06   Conveyance of Uncertificated REMIC I and REMIC II Regular Interests; Acceptance by the Trustee.............. | 22 |
|  | Section 2.07   Issuance of Certificates Evidencing Interest in REMIC II......... | 22 |
|  | Section 2.08   Purposes and Powers of the Trust. (See Section 2.08 of the Standard Terms)................................... | 22 |
|  | Section 2.09   Agreement Regarding Ability to Disclose..... | 22 |
| ARTICLE III | ADMINISTRATION AND SERVICING OF MORTGAGE LOANS............. | 24 |

Section 3.01    Master Servicer to Act as Servicer...........................24
Section 3.02    Subservicing Agreements Between Master Servicer and
                Subservicers; Enforcement of Subservicers' and Sellers'
                Obligations..................................................25
Section 3.03    Successor Subservicers. (See Section 3.03 of the Standard
                Terms).......................................................26
Section 3.04    Liability of the Master Servicer. (See Section 3.04 of the
                Standard Terms)..............................................26
Section 3.05    No Contractual Relationship Between Subservicer and Trustee
                or Certificateholders. (See Section 3.05 of the Standard
                Terms).......................................................26
Section 3.06    Assumption or Termination of Subservicing Agreements by
                Trustee......................................................26
Section 3.07    Collection of Certain Mortgage Loan Payments; Deposits to
                Custodial Account. (See Section 3.07 of the Standard Terms)..26
Section 3.08    Subservicing Accounts; Servicing Accounts....................26
Section 3.09    Access to Certain Documentation and Information Regarding
                the Mortgage Loans. (See Section 3.09 of the Standard Terms).27
Section 3.10    Permitted Withdrawals from the Custodial Account.............27
Section 3.11    Maintenance of the Primary Insurance Policies; Collections
                Thereunder. (See Section 3.11 of the Standard Terms).........29
Section 3.12    Maintenance of Fire Insurance and Omissions and Fidelity
                Coverage. (See Section 3.12 of the Standard Terms)...........29
Section 3.13    Enforcement of Due-on-Sale Clauses; Assumption and
                Modification Agreements; Certain Assignments. (See Section
                3.13 of the Standard Terms)..................................29
Section 3.14    Realization Upon Defaulted Mortgage Loans....................29
Section 3.15    Trustee to Cooperate; Release of Mortgage Files. (See
                Section 3.15 of the Standard Terms)..........................31
Section 3.16    Servicing and Other Compensation; Compensating Interest.
                (See Section 3.16 of the Standard Terms).....................31
Section 3.17    Reports to the Trustee and the Company. (See Section 3.17 of
                the Standard Terms)..........................................31
Section 3.18    Annual Statement as to Compliance. (See Section 3.18 of the
                Standard Terms)..............................................31
Section 3.19    Annual Independent Public Accountants' Servicing Report.
                (See Section 3.19 of the Standard Terms).....................32
Section 3.20    Rights of the Company in Respect of the Master Servicer.
                (See Section 3.20 of the Standard Terms).....................32
Section 3.21    Administration of Buydown Funds. (See Section 3.21 of the
                Standard Terms)..............................................32
Section 3.22    Advance Facility. (See Section 3.22 of the Standard Terms)...32
ARTICLE IV      PAYMENTS TO CERTIFICATEHOLDERS...............................33
Section 4.01    Certificate Account. (See Section 4.01 of the Standard Terms)33
Section 4.02    Distributions................................................
Section 4.03    Statements to Certificateholders; Statements to Rating
                Agencies; Exchange Act Reporting. (See Section 4.03 of the
                Standard Terms)..............................................43
Section 4.04    Distribution of Reports to the Trustee and the Company;
                Advances by the Master Servicer. (See Section 4.04 of the
                Standard Terms)..............................................43
Section 4.05    Allocation of Realized Losses................................43
Section 4.06    Reports of Foreclosures and Abandonment of Mortgaged
                Property. (See Section 4.06 of the Standard Terms)...........45
Section 4.07    Optional Purchase of Defaulted Mortgage Loans................45
Section 4.08    Surety Bond. (See Section 4.08 of the Standard Terms)........46
ARTICLE V       THE CERTIFICATES.............................................47
Section 5.01    The Certificates.............................................47
Section 5.02    Registration of Transfer and Exchange of Certificates. (See
                Section 5.02 of the Standard Terms)..........................48
Section 5.03    Mutilated, Destroyed, Lost or Stolen Certificates. (See
                Section 5.03 of the Standard Terms)..........................48
Section 5.04    Persons Deemed Owners. (See Section 5.04 of the Standard
                Terms).......................................................48
Section 5.05    Appointment of Paying Agent. (See Section 5.05 of the
                Standard Terms)..............................................48
ARTICLE VI      THE COMPANY AND THE MASTER SERVICER (See Article VI of the Standard
                Terms).......................................................49
ARTICLE VII     DEFAULT (See Article VII of the Standard Terms)..............50
ARTICLE VIII    CONCERNING THE TRUSTEE (See Article VIII of the Standard Terms)51
ARTICLE IX      TERMINATION..................................................52
Section 9.01    Optional Purchase by the Master Servicer of All
                Certificates; Termination Upon Purchase by the Master
                Servicer or Liquidation of All Mortgage Loans................52
Section 9.02    Additional Termination Requirements. (See Section 9.02 of
                the Standard Terms)..........................................53
Section 9.03    Termination of Multiple REMICs. (See Section 9.03 of the
                Standard Terms)..............................................53
ARTICLE X       REMIC PROVISIONS.............................................54
Section 10.01   REMIC Administration. (See Section 10.01 of the Standard
                Terms).......................................................54
Section 10.02   Master Servicer; REMIC Administrator and Trustee
                Indemnification. (See Section 10.02 of the Standard Terms)...54
Section 10.03   Designation of REMIC(s)......................................54
Section 10.04   Distributions on the Uncertificated REMIC I Regular
                Interests Z..................................................54
Section 10.05   Compliance with Withholding Requirements.....................56
ARTICLE XI      MISCELLANEOUS PROVISIONS.....................................57
Section 11.01   Amendment. (See Section 11.01 of the Standard Terms).........57
Section 11.02   Recordation of Agreement; Counterparts. (See Section 11.02
                of the Standard Terms).......................................57
Section 11.03   Limitation on Rights of Certificateholders. (See Section
                11.03 of the Standard Terms).................................57
Section 11.04   Governing Laws. (See Section 11.04 of the Standard Terms)....57

Section 11.05   Notices.......................................................57
Section 11.06   Required Notices to Rating Agency and Subservicer................58
Section 11.07   Severability of Provisions. (See Section 11.07 of the
                Standard Terms)..............................................59
Section 11.08   Supplemental Provisions for Resecuritization. (See Section
                11.08 of the Standard Terms).................................59
Section 11.09   Allocation of Voting Rights..................................59
Section 11.10   No Petition..................................................59

{PAGE}

EXHIBITS

Exhibit One:     Mortgage Loan Schedule (Available from the Company upon request.)
Exhibit Two:     Schedule of Discount Fractions (Available from the Company upon request.)
Exhibit Three:   Information to be Included in Monthly Distribution Date Statement
Exhibit Four:    Standard Terms of Pooling and Servicing Agreement dated as of May 1, 2005

{/TABLE}

{PAGE}

This is a Series Supplement, dated as of December 1, 2005 (the "Series Supplement"), to the Standard Terms of Pooling and Servicing Agreement, dated as of May 1, 2005 and attached as Exhibit Four hereto (the "Standard Terms" and, together with this Series Supplement, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., as the company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING CORPORATION, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, as Trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT

The Company intends to sell Mortgage Pass-Through Certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund. As provided herein, the REMIC Administrator will make an election to treat the entire segregated pool of assets described in the definition of Trust Fund, and subject to this Agreement (including the Mortgage Loans but excluding the Initial Monthly Payment Fund), as a real estate mortgage investment conduit (the "REMIC") for federal income tax purposes and such segregated pool of assets will be designated as "REMIC I." The Uncertificated REMIC Regular I Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein). A segregated pool of assets consisting of the Uncertificated REMIC I Regular Interests will be designated as "REMIC II," and the REMIC Administrator will make a separate REMIC election with respect thereto. The Class A-1 Certificates, Class A-2 Certificates, Class A-3 Certificates, Class A-4 Certificates, Class A-5 Certificates, Class A-6 Certificates, Class A-7 Certificates, Class A-8 Certificates, Class A-9 Certificates, Class A-10 Certificates, Class A-11 Certificates, the Class A-12 Certificates, Class A-P Certificates, Class M-1 Certificates, Class M-2 Certificates, Class M-3 Certificates, Class B-1 Certificates, Class B-2 Certificates, Class B-3 Certificates and the Uncertificated REMIC II Regular Interests Z will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions. The Class A-V Certificates will represent the entire beneficial ownership interest in the Uncertificated REMIC I Regular Interests Z.

The terms and provisions of the Standard Terms are hereby incorporated by reference herein as though set forth in full herein. If any term or provision contained herein shall conflict with or be inconsistent with any provision contained in the Standard Terms, the terms and provisions of this Series Supplement shall govern. Any cross-reference to a section of the Pooling and Servicing Agreement, to the extent the terms of the Standard Terms and Series Supplement conflict with respect to that section, shall be a cross-reference to the related section of the Series Supplement. All capitalized terms not otherwise defined herein shall have the meanings set forth in the Standard Terms. The Pooling and Servicing Agreement shall be dated as of the date of the Series Supplement.

The following table sets forth the designation, type, Pass-Through Rate, aggregate Initial Certificate Principal Balance, Maturity Date, initial ratings and certain features for each Class of Certificates comprising the interests in the Trust Fund created hereunder.

{TABLE}
{CAPTION}

| DESIGNATION | PASS-THROUGH RATE | AGGREGATE INITIAL CERTIFICATE PRINCIPAL BALANCE | FEATURES(1) | MATURITY DATE | MOODY'S/ S&P/FITCH | MINIMUM DENOMINATIONS(2) |
|---|---|---|---|---|---|---|
| {S}    {C} | {C} | {C} | | | {C} | {C} |
| Class A-1 | Adjustable | $103,066,220.00 | Senior/Floater/Adjustable Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |

| Class | Rate | | Type | | Rating | Denomination |
|-------|------|---|------|---|--------|--------------|
| Class A-2 | Adjustable Rate | $17,924,560.00 | Senior/Inverse Floater/Adjustable Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-3 | 5.75% | $49,879,000.00 | Super Senior/Fixed Rate | December, 2035 | Aaa/AAA | $100,000.00 |
| Class A-4 | 5.75% | $1,871,320.00 | Senior Support/Fixed Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-5 | 5.75% | $81,289,900.00 | Senior/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-6 | 5.75% | $32,000,000.00 | Super Support/Lockout/Fixed Rate | December, 2035 | Aaa/AAA | $100,000.00 |
| Class A-7 | 5.75% | $5,716,000.00 | Senior Support/Lockout/Fixed Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-8 | 5.50% | $15,986,000.00 | Super Senior/Accretion Directed/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-9 | 5.50% | $21,160,000.00 | Super Senior/Accrual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-10 | 6.25% | $15,000,000.00 | Senior/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-11 | 6.25% | $4,200,000.00 | Senior/Retail/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $1,000.00 |
| Class A-12 | 5.50% | $1,254,000.00 | Senior Support/Accretion Directed Fixed/Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-P | 0.00% | $3,504,096.32 | Senior/Principal Only | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-V | Variable Rate(3) | Notional | Senior/Interest Only/Variable | December, 2035 | Aaa/AAA/AAA | $2,000,000.00 |
| Class R-I | 5.75% | $100.00 | Senior/Residual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | (4) |
| Class R-II | 5.75% | $100.00 | Senior/Residual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | (4) |
| Class M-1 | 5.75% | $7,515,400.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/AA | $100,000.00 |
| Class M-2 | 5.75% | $2,382,900.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/A | $250,000.00 |
| Class M-3 | 5.75% | $1,466,400.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/BBB | $250,000.00 |
| Class B-1 | 5.75% | $916,500.00 | Subordinate/Fixed Rate | December, 2035 | NA/NA/BB | $250,000.00 |
| Class B-2 | 5.75% | $549,900.00 | Subordinate/Fixed Rate | December, 2035 | NA/NA/B | $250,000.00 |
| Class B-3 | 5.75% | $916,565.37 | Subordinate/Fixed Rate | December, 2035 | NA/NA/NA | $250,000.00 |

{/TABLE}

--------

(1)    The Certificates, other than the Class B and Class R Certificates shall be Book-Entry Certificates. The Class B Certificates and the Class R Certificates shall be delivered to the holders thereof in physical form.

(2)    The Certificates, other than the Class R Certificates, shall be issuable in minimum dollar denominations as indicated above (by Certificate Principal Balance or Notional Amount, as applicable) and integral multiples of $1 (or $1,000 in the case of the Class B-1, Class B-2 and Class B-3 Certificates) in excess thereof, except that one Certificate of any of the Class B-1, Class B-2 and Class B-3 Certificates that contain an uneven multiple of $1,000 shall be issued in a denomination equal to the sum of the related minimum denomination set forth above and such uneven multiple for such Class or the sum of such denomination and an integral multiple of $1,000.

(3)    The initial Pass-Through Rate on the Class A-V Certificates is 0.1674%.

(4)    The Class R Certificates shall be issuable in minimum denominations of not less than a 20% Percentage Interest; provided, however, that one Class R Certificate will be issuable to Residential Funding as "tax matters person" pursuant to Section 10.01(c) and (e) in a minimum denomination representing a Percentage Interest of not less than 0.01%.


[PAGE]


        The Mortgage Loans have an aggregate principal balance as of the Cut-off Date of $366,598,962.

        In consideration of the mutual agreements herein contained, the Company, the Master Servicer and the Trustee agree as follows:


[PAGE]

ARTICLE I


                            DEFINITIONS

Section 1.01...Definitions.

        Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

        Accretion Termination Date: The earlier of (a) the Distribution Date on which the aggregate Certificate Principal Balance of the Class A-9 Certificates and Class A-12 Certificates is reduced to zero and (b) the Credit Support Depletion Date.

        Accrual Certificates:   The Class A-9 Certificates.

        Accrued Distribution Amount: With respect to each Distribution Date preceding the Accretion Termination Date, an amount equal to the amount of Accrued Certificate Interest on the Class A-9 Certificates that is added to the Certificate Principal Balance of the Class A-9 Certificates, on such Distribution Date pursuant to Section 4.02(h).

        Adjustable Rate Certificates:  Any one of the Class A-1 Certificates and Class A-2 Certificates.

        Bankruptcy Amount: As of any date of determination prior to the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of (A)

$100,000 over (B) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 of this Series Supplement. As of any date of determination on or after the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of

(1) the lesser of (a) the Bankruptcy Amount calculated as of the close of business on the Business Day immediately preceding the most recent anniversary of the Cut-off Date coinciding with or preceding such date of determination (or, if such date of determination is an anniversary of the Cut-off Date, the Business Day immediately preceding such date of determination) (for purposes of this definition, the "Relevant Anniversary") and (b) the greater of

(A) the greater of (i) 0.0006 times the aggregate principal balance of all the Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary (other than Additional Collateral Loans, if any) having a Loan-to-Value Ratio at origination which exceeds 75% and (ii) $100,000; and

(B) the greater of (i) the product of (x) an amount equal to the largest difference in the related Monthly Payment for any Non-Primary Residence Loan remaining in the Mortgage Pool (other than Additional Collateral Loans, if any) which had an original Loan-to-Value Ratio of 80% or greater that would result if the Net Mortgage Rate thereof was equal to the weighted average (based on the principal balance of the Mortgage Loans as of the Relevant Anniversary) of the Net Mortgage Rates of all Mortgage Loans as of the Relevant Anniversary less 1.25% per annum, (y) a number equal to the weighted average remaining term to maturity, in months, of all Non-Primary Residence Loans remaining in the Mortgage Pool as of the Relevant Anniversary, and (z) one plus the quotient of the number of all Non-Primary Residence Loans remaining in the Mortgage Pool divided by the total number of Outstanding Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary, and (ii) $100,000,

over

(2) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the Relevant Anniversary.

The Bankruptcy Amount may be further reduced by the Master Servicer (including accelerating the manner in which such coverage is reduced) provided that prior to any such reduction, the Master Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction shall not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the State of New York, the State of Michigan, the State of California, the State of Illinois or the City of St. Paul, Minnesota (and such other state or states in which the Custodial Account or the Certificate Account are at the time located) are required or authorized by law or executive order to be closed.

Certificate: Any Class A, Class M, Class B or Class R Certificate.

Certificate Account: The separate account or accounts created and maintained pursuant to Section 4.01 of the Standard Terms, which shall be entitled "U.S. Bank National Association, as trustee, in trust for the registered holders of Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S9" and which must be an Eligible Account.

Class A Certificate: Any one of the Class A-1, Class A-2, Class A-3, Class A-4, Class A-5, Class A-6, Class A-7, Class A-8, Class A-9, Class A-10, Class A-11, Class A-12, Class A-P or Class A-V Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-3 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is the Certificate Principal Balance of the Class A-3 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that Distribution Date.

Class A-3 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-3 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-6/A-9 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is the sum of the Certificate Principal Balances of the Class A-6 and Class A9 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that distribution date.

Class A-6/A-9 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-6/A-9 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-8 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is the Certificate Principal Balance of the Class A-8 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that Distribution Date.

Class A-8 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-8 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-8/A-9/A-12 Percentage: With respect to any Distribution Date, a fraction expressed as a percentage, the numerator of which is an amount equal to the aggregate Certificate Principal Balance of the Class A-8, Class A-9, and Class A-12 Certificates immediately prior to that Distribution Date, and the denominator of which is an amount equal to the aggregate Certificate Principal Balance of the Class A-8, Class A-9, Class A-10, Class A-11 and Class A-12 Certificates immediately prior to that Distribution Date.

Class A-10/A-11 Percentage: With respect to any Distribution Date, a percentage equal to 100% minus the Class A-8/A-9/A-12 Percentage as of that Distribution Date.

Class R Certificate: Any one of the Class R-I or Class R-II Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit D and evidencing an interest designated as a "residual interest" in the related REMIC for purposes of the REMIC Provisions.

Closing Date: December 29, 2005.

Corporate Trust Office: The principal office of the Trustee at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at U.S. Bank National Association, U.S. Bank Corporate Trust Services, EP-MN-WS3D, 60 Livingston Avenue, St. Paul, Minnesota 55107, Attention: RFMSI 2005-S9.

Cut-off Date: December 1, 2005.

Determination Date: With respect to any Distribution Date, the second Business Day prior to such Distribution Date.

Discount Net Mortgage Rate: 5.75% per annum.

Due Period: With respect to each Distribution Date and any Mortgage Loan, the calendar month of such Distribution Date.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the debt obligations of which have been rated by each Rating Agency in its highest rating available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (a) evidenced by an Opinion of Counsel delivered to the Trustee and each Rating Agency) the registered Holders of Certificates have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Custodial Account, a trust account or accounts maintained in the corporate trust department of U.S. Bank National Association, or (iv) in the case of the Certificate Account, a trust account or accounts maintained in the corporate trust division of the Trustee, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account as the Custodial Account or the Certificate Account will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency).

Eligible Funds: On any Distribution Date, the portion, if any, of the Available Distribution Amount remaining after reduction by the sum of (i) the aggregate amount of Accrued Certificate Interest on the Senior Certificates, (ii) the Senior Principal Distribution Amount (determined without regard to Section 4.02(a)(iii)(Y)(D) of this Series Supplement), (iii) the Class A-P Principal Distribution Amount (determined without regard to Section 4.02(b)(i)(E) of this Series Supplement) and (iv) the aggregate amount of Accrued Certificate Interest on the Class M, Class B-1 and Class B-2 Certificates.

Floater Certificates: The Class A-1 Certificates.

Fraud Loss Amount: As of any date of determination after the Cut-off

Exhibit "D"

This page is part of your document - **DO NOT DISCARD**

**20111672086**





Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

12/12/11 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



LEADSHEET



201112120190003

00005072632



003672135

SEQ:
09

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

Requested and Prepared by:
**Executive Trustee Services, LLC**

When Recorded Mail To:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**


12/12/2011
*20111672086*

11ᵒ547556

Loan No.: 7440457893
TS NO: CA1100046646
MIN #: 100046120544590003
MERS Phone: 1-888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**U.S. Bank National Association as Trustee for RFMSI 2005S9**

all beneficial interest under that certain Deed of Trust dated: 11/03/2005 executed by ROBERT DE VICO, AN UNMARRIED MAN, as Trustor(s), to INVESTORS TITLE CORPORATION, as Trustee, and recorded as Instrument No. 05 2745537, on 11/15/2005, In Book XX, Page XX of Official Records, in the office of the County Recorder of Los Angeles County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 11-2-11
12/12/11 FILED

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR T.J.
FINANCIAL, INC. Its successors and assigns

Tyrone Thorogood Assistant Secretary

State of Pennsylvania } ss.
County of Montgomery }

On 12/2/2011 before me, Paulina Maj                Notary Public, personally appeared
Tyrone Thorogood      who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of                that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
PAULINA MAJ, Notary Public
Horsham Twp., Montgomery County
My Commission Expires November 20, 2012

Exhibit "E"

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

12/14/2011

*20111686437*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS NO : CA1100046646
LOAN NO : 7440457893

## SUBSTITUTION OF TRUSTEE

WHEREAS, ROBERT DE VICO, AN UNMARRIED MAN was the original Trustor, INVESTORS TITLE CORPORATION was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR T.J. FINANCIAL, INC. was the original Beneficiary under that certain Deed of Trust dated 11/03/2005 and recorded on 11/15/2005 as Instrument No. 05 2745537, in Book XX , Page XX of Official Records of Los Angeles County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: ____12-5-11____

U.S. Bank National Association as Trustee for RFMSI 2005S9 by Residential Funding Company, LLC, fka Residential Funding Corporation, as its Attorney in Fact

_Tyrone Thorogood_
Tyrone Thorogood  Authorized Officer

State of  Pennsylvania      } ss.
County of  Montgomery       }

On  DEC 0 5 2011  before me,  Mary Lynch  Notary Public, personally appeared Tyrone Thorogood  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  Pennsylvania  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ____Mary Lynch____ (Seal)     COMMONWEALTH OF PENNSYLVANIA

Exhibit "F"

12/14/2011

*20111686438*

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
**Executive Trustee Services, LLC**
**dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**APN: 5581-025-008**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : CA1100046646    Loan No.: 7440457893
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $68,734.99 as of **Dec 13, 2011,** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**U.S. Bank National Association as Trustee for RFMSI 2005S9.**
**C/O Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932 phone**

TS NO.: CA1100046646           LOAN NO.: 7440457893

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **11/03/2005**, executed by **ROBERT DE VICO, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR T.J. FINANCIAL, INC.,** as beneficiary, recorded **11/15/2005**, as Instrument No. **05 2745537**, in Book **XX** , Page  **XX**,  of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$565,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 10/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated:  Dec 13, 2011

ETS Services, LLC as Agent for Beneficiary

BY: _____

Jennifer Esteban
TRUSTEE SALE OFFICER

Exhibit "G"

Los Angeles County Registrar / Recorder
12400 Imperial Highway, Norwalk, CA
(800)201-8999

Revenue Collection

NORWALK

Cashier: M. Chacon



*201203190040072*

Monday, March 19, 2012 3:19 PM



art of your document - DO NOT DISCARD

## 20120426660



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/19/12 AT 03:21PM**

| FEES: | 18.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

Item(s)

| Fee | Qty | Total |
|---|---|---|

Recorded Document Count = 1

20120426660
| BASIC RECORDING FEE | 1 | $10.00 |
| D.A. SURCHARGE | 1 | $3.00 |
| AB 1168 REDACTION FEE | 1 | $1.00 |
| Electronic Recording Fee | 1 | $1.00 |
| Micrographics Fee | 1 | $1.00 |
| Days of Operation Fee | 1 | $1.00 |
| Indexing | 1 | $1.00 |
| CERTIFIED COPY (FIRST PAG. | 1 | $6.00 |

Subtotal      =      $24.00

## Total      $24.00

Customer payment(s):

Check                    $24.00



201203190040072

Check List:
#3926                    $24.00

00005529733



003867995

**SEQ:**
**01**

DAR - Counter (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

RECORDING REQUESTED BY:
ROBERT DE VICO
3380 Deronda Drive
Los Angeles, CA 90068



03/19/2012

*20120426660*

AND WHEN RECORDED MAIL TO :
ROBERT DE VICO
3380 Deronda Drive
Los Angeles, CA 90068

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 5581-025-008

# FULL RECONVEYANCE

T.J. FINANCIAL, INC., 181 W. Huntington Drive, #108, Monrovia, CA 91016, a Corporation, as original beneficiary under Deed of Trust, dated November 3, 2005, made by Robert de Vico, an unmarried man, Trustor, and recorded as Instrument Number 05 2745537 on November 15, 2005, in Book XX Page XX, of Official Records in the Office of the County Recorder of Los Angeles County, California, describing the land herein as 3380 Deronda Drive, Los Angeles, CA 90068:

LEGAL DESCRIPTION: TRACT # 6450 LOT COM AT INTERSECTION OF SE LINE OF LOT 7 BLK 19 WITH A LINE PARALLEL WITH AND DIST NE AT R/A 20 FT FROM SW LINE OF SD LOT TH NW PARALLEGEL... SEE MAPBOOK FOR MISSING PORTION... LOTS 7 and LOT 8 BLK 19.

T.J. FINANCIAL, INC., having received written Order by Hon. Judge John Segal, hereby reconveys in full, any and all interests it has in the property without warranty or recourse. Effective as of the date below.

Dated MARCH 19, 2012

T. J. FINANCIAL, INC., a California corporation
Substituted Trustee

By _____
Tien-I Lee, President

WITNESS my hand and official seal.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
ON _3/19/12_ before me,
_Christine L. Y. Lee_ Notary Public
personally appeared _Tien-I Lee_
who proved to me on the basis of satisfactory evidence
to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed
the same in his authorized capacity, and that by his
signature on the instrument the person, or the entity
upon behalf of which the person acted, executed the
instrument.

CHRISTINE L Y LEE
Commission # 1907131
Notary Public - California
Los Angeles County
My Comm. Expires Nov 4, 2014

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph is
true and correct.

Signature _____

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

MAR 19 2012

REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

Exhibit "H"

RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S. No. **CA1100046646**
Loan No. **7440457893**
Insurer No.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/03/2005. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for
any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **ROBERT DE VICO, AN UNMARRIED MAN**
Recorded **11/15/2005** as Instrument No. **05 2745537** in Book **XX** , page  **XX**  of Official Records in the
office of the Recorder of Los Angeles County, California
Date of Sale: **04/09/2012** at **11:00 A.M.**
Place of Sale:    **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766**
Property Address is purported to be:     **3380 DERONDA DRIVE**
                       . **LOS ANGELES (HOLLYWOOD AREA), CA 90068**

APN #: **5581-025-008**

The total amount secured by said instrument as of the time of initial publication of this notice is
**$589,648.46**, which includes the total amount of the unpaid balance (including accrued and unpaid
interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this
notice. .

Date: **03/14/2012**                **Executive Trustee Services, LLC dba ETS Services, LLC**
                       **2255 North Ontario Street, Suite 400**
                       **Burbank, CA 91504-3120**
                       **Sale Line:  714-730-2727**


                       **Omar Solorzano, TRUSTEE SALE OFFICER**

Exhibit "I"

Los Angeles County Registrar / Recorder
12400 Imperial Highway, Norwalk, CA
(800)201-8999

Revenue Collection

NORWALK

Cashier: M. Chacon



\* 2 0 1 2 0 3 1 9 0 0 4 0 0 7 2 \*

Monday, March 19, 2012 3:19 PM

<u>Item(s)</u>

| Fee | Qty | Total |
|---|---|---|

Recorded Document Count = 1

20120426660
| BASIC RECORDING FEE | 1 | $10.00 |
| D.A. SURCHARGE | 1 | $3.00 |
| AB 1168 REDACTION FEE | 1 | $1.00 |
| Electronic Recording Fee | 1 | $1.00 |
| Micrographics Fee | 1 | $1.00 |
| Days of Operation Fee | 1 | $1.00 |
| Indexing | 1 | $1.00 |
| CERTIFIED COPY (FIRST PAG | 1 | $6.00 |

| Subtotal | = | $24.00 |

**Total**          **$24.00**

Customer payment(s):

Check                    $24.00

<u>Check List:</u>
#3926                    $24.00





art of your document - DO NOT DISCARD

# 20120426660

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

03/19/12 AT 03:21PM

| FEES: | 18.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**

201203190040072

00005529733

003867995

SEQ:
01

DAR - Counter (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

RECORDING REQUESTED BY:
ROBERT DE VICO
3380 Deronda Drive
Los Angeles, CA 90068



03/19/2012

*20120426660*

AND WHEN RECORDED MAIL TO :
ROBERT DE VICO
3380 Deronda Drive
Los Angeles, CA 90068

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 5581-025-008

# FULL RECONVEYANCE

T.J. FINANCIAL, INC., 181 W. Huntington Drive, #108, Monrovia, CA 91016, a Corporation, as original beneficiary under Deed of Trust, dated November 3, 2005, made by Robert de vico, an unmarried man, Trustor, and recorded as Instrument Number 05 2745537 on November 15, 2005, in Book XX Page XX, of Official Records in the Office of the County Recorder of Los Angeles County, California, describing the land herein as 3380 Deronda Drive, Los Angeles, CA 90068:

LEGAL DESCRIPTION:  TRACT # 6450 LOT COM AT INTERSECTION OF SE LINE OF LOT 7 BLK 19 WITH A LINE PARALLEL WITH AND DIST NE AT R/A 20 FT FROM SW LINE OF SD LOT TH NW PARALLEGEL... SEE MAPBOOK FOR MISSING PORTION... LOTS 7 and LOT 8 BLK 19.

T.J. FINANCIAL, INC., having received written Order by Hon. Judge John Segal, hereby reconveys in full, any and all interests it has in the property without warranty or recourse. Effective as of the date below.

Dated MARCH 19, 2012

T. J. FINANCIAL, INC., a California corporation
Substituted Trustee

By _____
Tien-I Lee, President

WITNESS my hand and official seal.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
ON _3/19/12_ before me, _____
_Christine L. Y. Lee_, Notary Public
personally appeared _Tien-I Lee_,
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

CHRISTINE L Y LEE
Commission # 1907131
Notary Public - California
Los Angeles County
My Comm. Expires Nov 4, 2014

Signature _____

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

MAR 19 2012

Dean C. Logan  REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA



## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

### CV12- 8440 CBM (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ROBERT DE VICO, an individual | U.S. BANK, N.A. a corporation; GMAC MORTGAGE, LLC, a limited liability company; ETS SERVICES, LLC, a limited liability company; and Does 1-10, inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Simon and Resnik LLP; 15233 Ventura Blvd., Suite 300 Sherman Oaks, Ca. 91403 | Matthew Resnik, Esquire |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No      ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332 "a"

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☒ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:    Case Number: CV12-03205    **CV12-8440**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No  ☑ Yes
If yes, list case number(s):  CV12-03205 - MMM (FFMx)

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s):  CV12-03205 - MMM (FFMx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
  ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | U.S. Bank, N.A. a corporation - New York, NY<br>GMAC Mortgage, LLC, a limited liability company - Delaware, Ca<br>ETS Services LLC, a Limited Liability Company - Ca |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | U.S. Bank, N.A. a corporation - New York, NY<br>GMAC Mortgage, LLC, a limited liability company - Delaware, Ca<br>ETS Services LLC, a Limited Liability Company - Ca |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | ETS Services LLC, a Limited Liability Company - Ca |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  10-1-12

  Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, Include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Matthew D. Resnik, Esq SBN:182562
Simon & Resnik, LLP
15233 Ventura Blvd., Suite 300
Sherman Oaks, CA 91403
Tel: (818) 783-6251
Fax: (818) 783-6253

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DE VICO, an individual, | CASE NUMBER |
| PLAINTIFF(S) | **CV12-8440** —CBM(Ex) |
| v. | |
| U.S. BANK, N.A., a corporation; GMAC MORTGAGE USA, Corporation, a corporation; ETS SERVICE, LLC, a limited liability company; and Does 1 to 10 DEFENDANT(S). inclusive, | SUMMONS |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Matthew D. Resnik, Esq._____, whose address is _15233 Ventura Blvd., Suite 300, Sherman Oaks, CA 91403_____.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _OCT - 2 2012_

By: ___MARILYN DAVIS___

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*