1 | Matthew Resnik, Esq. (SBN 182562)
**SIMON & RESNIK, LLP**
2 | 15233 Ventura Blvd., Suite 300
Sherman Oaks, CA 91403
3 | Telephone: (818) 783-6251
Facsimile: (818) 783-6253
4 | matthew@simonresniklaw.com
Attorneys for Plaintiff
5 | ROBERT DE VICO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ROBERT DE VICO, | ) Case No **CV12-8440**-CBM (Ex) |
| Plaintiff, | ) ***EX PARTE* APPLICATION FOR A** |
| | ) **TEMPORARY RESTRAINING ORDER** |
| vs. | ) **AND AN ORDER TO SHOW CAUSE RE:** |
| | ) **PRELIMINARY INJUNCTION TO** |
| U.S. BANK, N.A., a corporation; GMAC | ) **ENJOIN BANK FROM FORECLOSING** |
| MORTGAGE U.S.A. CORPORATION, a | ) **ON THE SUBJECT PROPERTY ON <u>OCT.</u>** |
| corporation; ETS SERVICES, LLC, a | ) **<u>3, 2012 at 11:00 am</u>; MEMORANDUM OF** |
| limited liability company; and Does 1 to 10, | ) **POINTS AND AUTHORITIES IN** |
| Inclusive, | ) **SUPPORT THEREOF; DECLARATION** |
| | ) **OF ROBERT DE VICO** |
| Defendants. | ) |
| | ) Complaint Filed: Oct. 1, 2012 |
| | Hon. _____ |
| | Dept.: __ |
| | Trial Date: Not Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2012, Plaintiff ROBERT DE VICO ("Plaintiff") will apply for a temporary restraining order to restrain Defendants from foreclosing on the subject property, and for an order requiring Defendants to show cause why a

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT PROPERTY ON <u>OCT. 3, 2011</u> @ 11:00 am

1

[ORIGINAL]

1  preliminary injunction should not be issued pending trial in this action, enjoining defendants

2  and their employees, agents, and persons acting with them or on their behalf, from selling,

3  attempting to auctioning, sell, causing to be sold, transferring ownership or further encumbering

4  the real property located at **3380 Deronda Drive, Los Angeles, CA 90038** ("Subject

5  Property").

6        Plaintiff respectfully requests that the Court enjoin defendants from auctioning, selling,

7  causing to be sold, transferring ownership or further encumbering the Subject Property.  This

8  application is made pursuant to the Cal. <u>Code of Civil Procedure</u> §527, on the grounds that

9  Plaintiff is the rightful and lawful owner of the Subject Property, and will suffer immediate and

10  irreparable harm if defendants are not enjoined from auctioning, selling, causing to be sold,

11  transferring ownership or further encumbering the Subject Property. This application is based

12  upon the memorandum of points and authorities, plaintiff's declaration and the Complaint filed

13  in this matter.

14

15                                              Respectfully submitted,

16                                              **SIMON & RESNIK, LLP**

17  Dated: October 1, 2012

18                                              By:_____
                                                Matthew Resnik, Esq.
19                                              Attorneys for Plaintiff
                                                ROBERT DE VICO
20

21

22

23

24

25

26

27

28
_____
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON <u>OCT. 3, 2011</u> @ 11:00 am

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4

The Trustee's Sale on the Subject Property is scheduled to be held on **Oct. 3, 2012** at

5

11:00 am despite the fact that Defendants violated Cal. Civil Code section 2923.5 by, *inter ala*,

6

failing to initiate contact with plaintiff to explore alternatives to foreclosure at any time,

7

including at least 30 days prior to recording the Notice of Default.

8

As such, equity implores that the Court order that defendants be enjoined and restrained

9

from auctioning, selling, causing to be sold, transferring ownership or further encumbering the

10

Subject Property to save Plaintiff from suffering immediate and irreparable harm until and

11

unless such time as they comply with said statute.

12

### II.

13

### PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

14

On or about February 1, 2001, Plaintiff purchased the subject property.

15

On or about November 15, 2005, plaintiff refinanced the subject property with a 30-year,

16

5.75% loan of $565,000.00 from T.J. FINANCIAL, INC. ("TJF") with a monthly payment of

17

$3,342.19 (principal & interest).  **Exhibit A** (relevant sections of Deed of Trust ("DOT")

18

recorded November 15, 2005; instrument no. 05 2745537; loan no. 2054459).  Identified therein

19

as "Lender" is T.J. FINANCIAL, INC., "Trustee" is INVESTORS TITLE CORP., and

20

"nominee for Lender"/"beneficiary" is MERS.

21

On or about October 1, 2010, plaintiff called GMAC and spoke to "Rick", who identified

22

himself as an employee in GMAC's Loss Mitigation Dept.  Plaintiff requested a loan

23

modification.  Rick promised to send out a loan modification application package.

24

Plaintiff never received any loan modification package from GMAC.  In fact, every time

25

plaintiff called GMAC, he requested said package, was promised it would be mailed but it never

26

did.

27

28

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON OCT. 3, 2011 @ 11:00 am

1       On or about November 1, 2010, plaintiff made his last payment on the subject loan. As

2   of this date, plaintiff had always been current.

3       On December 2, 2011, MERS purported to assign the subject loan to U.S. BANK, N.A.

4   AS TRUSTEE FOR RFMSI 2005S9 (the "TRUST"). **Exhibit B** (Assignment of the DOT

5   recorded December 12, 2011; instrument no. 20111672086). This was the first recorded

6   assignment since plaintiff obtained the loan on or about November 15, 2005.

7       On December 5, 2011, U.S. BANK purported to substitute in ETS as trustee. **Exhibit C**

8   (Substitution of Trustee ("SOT") recorded December 14, 2011; instrument no. 20111686437).

9       On December 14, 2011, U.S. BANK and ETS recorded a Notice of Default, alleging

10  arrearages of $68,734.99 as of December 13, 2011. **Exhibit D** (document # 11-1686438; TS#:

11  CA1100046646).

12      At the bottom of p.2 of the NOD is a so-called "2923.5 declaration" executed by ETS'

13  "TRUSTEE [*sic*] SALE OFFICER" JENNIFER ESTEBAN, who purported to have complied

14  with said statute by either contacting or attempting to contact plaintiff at least 30 days prior to

15  recording the NOD to explore alternatives to foreclosure (i.e., no later than November 14, 2011).

16      On March 16, 2012, U.S. BANK and ETS recorded a Notice of Trustee's Sale ("NOTS"),

17  identifying a sale date/time of **April 9, 2012** at 11:00 am, and total outstanding balance of

18  $589,648.46. **Exhibit E** (document # 12-0415992).

19      On April 12, 2012, plaintiff filed a related action in this Court (Case No. CV-12-03205-

20  MMM; the Hon. Margaret M. Murrow) against U.S. BANK, N.A., GMAC MORTGAGE, LLC,

21  ETS SERVICE, LLC and Does 1 through 10.

22      On April 16, 2012, plaintiff filed an amended complaint, invoking the court's diversity

23  jurisdiction under 28 U.S.C. §1332.

24      On September 25, 2012, the Court dismissed plaintiff's lawsuit <u>without</u> prejudice

25  essentially because a lack of diversity.

26

27

28

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON <u>OCT. 3, 2011</u> @ 11:00 am

4

On October 1, 2012, plaintiff filed the present action. Plaintiff respectfully submits that he cured the defects regarding diversity.

A trustee's sale is currently scheduled on the subject property for October 3, 2012 at 11:00 am.

### Factual Allegations regarding the TRUST

Plaintiff contends that the purported transfers of the DOT and Note into the TRUST were void because they occurred after the TRUST's Closing Date, thereby rendering these instruments void.

On December 1, 2005, a Pooling & Servicing Agreement ("PSA") was created for the establishment of the TRUST. According to its terms, on or prior to the **Closing Date of December 29, 2005** (but in no event later than ninety (90) days thereafter), any loans and Notes – including plaintiff's loan and Note – would have had to been transferred into the Trust by the date of the **transfer would be void. Exhibit F** (pp. 1-6 only – plaintiff will produce the balance of the voluminous PSA upon request). As discussed below, the DOT was purportedly assigned to the TRUST more than **six years after it closed.** Therefore, plaintiff contends that no such assignment of the DOT or the Note in fact lawfully occurred.

According to the terms of the PSA, the Note had to be properly endorsed by every intervening entity who laid claim to it at any time – which by the nature of the securitization process necessarily consists of no less than three (3) entities: RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC. as Sponsor and Seller; U.S. BANK, N.A. as Trustee; and RESIDENTIAL FUNDING CORPORATION as Master Servicer. Notably, neither the Issuing Entity, Custodian, nor the Depositor are identified therein.

Regardless of the foregoing, THE TRUST closed on **December 29, 2005**, and according to the PSA, no assets (including plaintiff's loan and Note) could be transferred therein after three months following the closing date in order to comply with IRS Code 860 (governing REMIC trusts). The TRUST is a REMIC trust, which is designed as a tax shelter. However, in order to

1   qualify for that status, it must be "static", meaning that loans cannot be transferred in and out

2   beyond the Closing Date.

3        Finally, in order to be a valid transfer into the TRUST, several transfers of the loan must

4   be made within the TRUST itself in order to be valid: (1) The mortgage lender originates the

5   pool of loans (here, TJF); (2) then it sells the pool to an investment bank or other entity called a

6   sponsor (here, RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.); (3) the

7   sponsor then sells the pool of loans to a special-purpose subsidiary, called the "depositor" that

8   has no other assets or liabilities in order to separate the loans from the sponsor's assets and

9   liabilities; and (4) then the depositor transfers the loans to a specially created, special-purpose

10  vehicle ("SPV") – i.e., a REMIC trust that holds the loans for the benefit of the investors

11  ("certificate holders").

## III.

## LEGAL STANDARD

14       Whether preliminary injunctive relief is governed by a multi-factor test: 1) whether

15  there is a likelihood of success on the merits; 2) whether there is a likelihood of irreparable

16  harm to plaintiff in the absence of such relief; 3) whether the balance of equities lies in

17  plaintiff's favor; and 4) whether injunctive relief is in the public interest. Winter v. NRDC, 129

18  S. Ct. 365, 374 (2008). However, in the Ninth Circuit, these factors are balanced against each

19  other on a sliding scale, such that, for example, the greater the showing on balance of the

20  equities the lesser must be the showing of likelihood of success.  The Ninth Circuit had

21  traditionally applied the sliding-scale test such that preliminary relief could be entered where

22  either: a plaintiff demonstrates a likelihood of success on the merits and the possibility of

23  irreparable injury. Id.

25      ///

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON OCT. 3, 2011 @ 11:00 am

# IV.

## PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS OF HIS COMPLAINT BECAUSE THE EVIDENCE SHOWS THAT DEFENDANTS FAILED TO COMPLY WITH CAL. *CIV. CODE* SECTION 2923.5.

The NOD contains the following language that purports to comply with Cal. Civ. Code section 2923.5: "The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by Cal. Civ. Code section 2923.5.

California Civ. Code section 2923.5 provides that a mortgagee, beneficiary, or authorized agent ("lender") must contact—or exercise due diligence in attempting to contact—the borrower in person or by telephone thirty days prior to filing a notice of default "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a). During the initial contact, the lender must advise the borrower that the borrower has the right to request a subsequent meeting and, if the borrower so requests, the lender must schedule a subsequent meeting within 14 days. Id. § 2923.5(a)(2).

California federal district and state courts have routinely overruled demurrers and motions to dismiss, and granted temporary restraining orders ("TROs") and preliminary injunctions based largely or even solely on a 2923.5 violation by the foreclosing defendant-bank, including in this federal district. *See, e.g., Mazed v. JPMorgan Chase Bank* (C.D. CA case # SACV 11-814-JST (MGLx); PACER # 8:11-cv-00814-JST-MLG; August 23, 2011) (TRO and preliminary injunction granted based largely on 2923.5 violation).

### (1) Plaintiff's Declaration Supports His 2923.5 Violation Claim

As the servicer on the subject loan, GMAC would have been the entity to contact plaintiff in compliance with 2923.5. However, at no time did any GMAC, or any other defendant or entity for that matter, contact him at any time to explore "alternatives to foreclosure" as required by section 2923.5, much less at least 30 days prior to the recordation of the NOD. Plaintiff never received any such calls much less messages from defendant. Plaintiff

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON OCT. 3, 2011 @ 11:00 am

is familiar with defendant's 1-800 phone number and never received any such calls as reflected by GMAC's caller ID on his cell or home phones. Nor did he receive any correspondence from said entities regarding said "alternatives to foreclosure" 30 or more days prior to the recordation of the NOD.

Specifically, plaintiff has a (1) cell phone with voice mail; (2) home phone (land line) with an answering machine; and (3) work telephone number. -- each has caller ID and captures all missed calls, incoming calls and messages 24 hours a day, 7 days a week, 365 days a year. Each has caller ID and captures all missed calls, incoming calls and messages 24 hours a day, 7 days a week, 365 days a year/

Plaintiff also has an e-mail account, fax machine at home and work, and mail box slot in the subject property's front door to which no one but plaintiff can access. At no time did he ever receive any such communications.

Plaintiff has always provided and updated these telephone & fax numbers and e-mail addresses to GMAC since he obtained the subject loan.

Plaintiff contends that said entities failed to (1) initiate contact with, or attempt to contact him re said alternatives; (2) inform him during any communication of his right to request an additional meeting within 14 days; or (3) provide him with the requisite 1-800 HUD telephone number. In other words, plaintiff contends that the section 2923.5 declaration is absolutely false and contradicted by the available evidence, and that as a result, the NOD is void *ab initio*.

**(2) Defendant's 2923.5 Declaration Should Be Rejected Based on Plaintiff's Declaration**

California federal district courts have found that where, as here, a plaintiff's complaint alleges facts directly contradicting statements in a 2923.5 declaration of compliance, such facts are sufficient to withstand at minimum a motion to dismiss. *See, e.g., Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09-cv-1561-IEG (WVG), 2010 WL 2618729, at *8 (S.D. Cal. June 25, 2010).

The *Quintero* court stated that "In their SAC, Plaintiffs allege that no contact or attempt to make contact was made, despite the declaration in the Notice of Default. Taking this

allegation as true, the Court cannot determine at this time whether Defendants complied with the requirement to contact Plaintiffs as set forth in § 2923.5(a)." Id.

Similarly, in *Pey v. Wachovia Mortg. Corp.*, (U.S. Dist. LEXIS 131699 at *27-28, N.D. Cal. 2011), the court held that "whether Defendants attached a declaration to the Notice of Default as required by section 2923.5(b) has no bearing on whether they actually complied with the requirements of section 2923.5(a) by contacting Pey or exercising due diligence in an attempt to contact him. Defendants cannot prove compliance with section 2923.5 simply by pointing to a declaration on the Notice of Default."

In its order denying defendant-bank's motion to dismiss, the Central District court in *Laden* v. *U.S. Bank National Assn.*, (C.D. Cal. Case 2:12-cv-00173-ODW-CW; order filed 02/13/12) stated that "Defendant disingenuously construes *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009), to stand for the proposition that '[i]f a complaint alleges due diligence was inadequate, but the Notice of Default is accompanied by a declaration of compliance, a court must disregard the allegation and rely on the declaration.' [...] [S]uch a broad reading is unmerited...." Id.

The *Laden* court went on to state that "Defendant argues that Plaintiff's claim for violation of Section 2923.5 must fail because Plaintiffs do not contend the contact required under Section 2923.5 did not take place; instead, Plaintiffs merely contend that they had to initiate such contact themselves. Accordingly, Defendant maintains that Plaintiffs have suffered no prejudice as a result of Defendant's alleged violation of Section 2923.5 because 'they had conversations with Defendant for the purpose of assessing plaintiffs' financial situation and exploring options to avoid foreclosure.' However, Defendant does not contest Plaintiffs' allegation that Defendant failed to inform Plaintiffs of their right to request a subsequent meeting, as required by Section 2923.5(a)(2). Thus, even assuming without deciding that Plaintiffs suffered no prejudice as a consequence of having to initiate contact with Defendant themselves, the remaining allegations in Plaintiffs' Complaint establish that Defendant committed an additional violation of Section 2923.5 for which Plaintiffs may seek redress. Defendant's lack-of-prejudice argument is therefore unavailing. [...] Absent compliance with

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT PROPERTY ON OCT. 3, 2011 @ 11:00 am

9

1  Section 2923.5, there can be no valid notice of default. [...] [D]espite Defendant's insistence to

2  the contrary, the mere filing of a declaration of compliance with a notice of default is not a

3  panacea for any failure to adhere to the express requirements of Section 2923.5. Accordingly,

4  the Court DENIES Defendant's Motion to Dismiss." Id.

5  Defendants will obviously have the opportunity to present evidence to the contrary prior

6  to or at the preliminary injunction hearing in this matter.

7  **(3) The Remedy for a 2923.5 Violation is a Postponement of the Trustee's Sale**

8  The *Pey* court held that "the remedy for violation of section 2923.5 is not merely a

9  postponement of the foreclosure sale, but rather a postponement of the sale ***until the foreclosing***

10  ***party complies with the statute***". Id.  *See also Paik v. Wells Fargo Bank, N.A.*, No. C 10-

11  04016, 2011 U.S. Dist. LEXIS 3979, 2011 WL 109482, at *3 (N.D. Cal. Jan. 13, 2011) (holding

12  that the only remedy for violation of this statute is postponement of a foreclosure sale until there

13  has been compliance with the statute).  In other words, until defendant communicates with

14  plaintiffs to explore alternatives to foreclosure.  Even then defendant will have to wait at least

15  another 30 days before it can lawfully record a new NOD; *see also Mabry v. Super. Ct.*, 185 Cal.

16  App. 4th 208, 223 (4th Dist. 2010) ("If section 2923.5 is not complied with, then there is no

17  valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed.

18  The available, existing remedy is . . . to postpone the sale until there has been compliance with

   section 2923.5.").

19  In *Skov v. U.S. Bank National Assn.*, 207 Cal. App. 4th 690 (Cal. App. 6th Dist., June 6,

20  2012), the court stated the following: "Section 2923.5 and section 2924g, subdivision (c)(1)(A),

21  when read together, establish a natural, logical whole, and one wholly consonant with the

22  Legislature's intent in enacting 2923.5 to have individual borrowers and lenders 'assess' and

23  'explore' alternatives to foreclosure: If section 2923.5 is not complied with, then there is no

24  valid notice of default and, **without a valid notice of default, a foreclosure sale cannot**

25  **proceed**. The available, existing remedy is found in the ability of a court in section 2924g,

26  subdivision (c)(1)(A), to **postpone the sale until there has been compliance with section**

27  **2923.5**. Reading section 2923.5 together with section 2924g, subdivision (c)(1)(A) gives

28

1    section 2923.5 real effect. The alternative would mean that the Legislature conferred a right on

2    individual borrowers in section 2923.5 without any means of enforcing that right." Id. at 698

3    (quoting Mabry, 185 Cal. App. 4th at 223–224) (emphasis added).

4                                              **IV.**

5    **PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS OF HIS COMPLAINT**

6    **BECAUSE THE EVIDENCE SHOWS THAT DEFENDANTS DID    NOT    LAWFULLY**

7    **TRANSFER                  THE                  SUBJECT                  LOAN**

8          Without the transfer of the subject loan proceeding exactly as described, the transfer is

9    **void**.   See, e.g., U.S. Bank v. Ibanez, SJC-10694, 2011 WL 38071 (2011), wherein the

10   Massachusetts Supreme Judicial Court invalidated two foreclosure sales.  There, the Court held

11   that in order to foreclose, the bank was required to show an unbroken chain of title from

12   origination to securitization in full compliance with the PSA in order to establish ownership of

13   the mortgage.

14         Plaintiff contends that this is precisely what happened, i.e., that his loan was not

15   transferred according to the terms of the subject PSA.  Indeed, it is impossible to even identify

16   who the custodian and depositor are, much less whether the loan properly passed through their

17   hands.  As a result, even aside from the Closing Date, plaintiff contends that his loan was never

18   lawfully transferred into the TRUST.  Consequently, U.S. BANK has no legal right to foreclose

19   on plaintiff's home on behalf of the TRUST.

20         Plaintiff's allegations herein are similar to those in several recent Ninth Circuit cases.  In

21   Schafer v. CitiMortgage, Inc., 2011 WL 2437267 (**C.D.** Cal. 2011; order denying in part MTD

22   filed June 15, 2011), this Court denied defendants' motion to dismiss plaintiff's declaratory

23   relief claim, which was based on alleged improper transfer due to alleged fraud in the execution

24   of documents.

25         Similarly, in Vogan v. Wells Fargo Bank, N.A., 2011 WL 5826016 (E.D. Cal. 2011), the

26   Court allowed plaintiffs' claims to proceed when plaintiffs alleged that the assignment was

27

28

1   executed **after the closing date of the securities pool**, "giving rise to a plausible inference that

2   at least some part of the recorded assignment was fabricated." *Johnson v. HSBC Bank, N.A.*

3   (S.D. Cal. Case No. 3:11-cv-2091, order denying banks' motion to dismiss ("MTD") filed

4   March 19, 2012).

5           In an identical case, *Johnson*, the Court found that plaintiff sufficiently alleged facts

6   "showing the Assignment was defective, invalid, or somehow voidable. ... [T]he complaint

7   states that MERS had no knowledge of the assignment, that Treva Moreland was never

8   appointed to "assistant secretary" by the MERS' board of directors, and thus there was no

9   authority to make the assignment." *Johnson v. HSBC Bank, N.A.* (S.D. Cal. Case No. 3:11-cv-

10  2091, March 19, 2012); *see also In Kingman Holdings, LLC v. CitiMortgage, Inc.*, 2011 WL

11  1883829 (E.D. Tex. 2011), where the court assessed a fraud claim against CitiMortgage in

12  which the plaintiff alleged that MERS' appointment of an assistant secretary ("Blackstun," who

13  later made the assignment) was invalid because it was not approved by the board of directors.

14  The court upheld the fraud claim, finding that Plaintiff's allegations were plausible and that if

15  Blackstun had no authority to bind MERS, then MERS filed a fraudulent document after he

16  executed the assignment. *Id.*

17          Based on the foregoing, plaintiff contends that he will prevail on his claim that

18  defendants recorded a fabricated assignment of the loan because the assignment was executed

19  after the closing date of the TRUST, and was executed by an individual who had no lawful

20  authority to do so. This gives rise to a plausible inference of fabrication. (Indeed, defendants'

21  conduct in recording the fabricated assignment is a **criminal violation** of Cal. Penal Code

22  section 532(f)(a)(4) (mortgage fraud results from the recording any document relating to a

23  mortgage loan transaction that the person "knows to contain a deliberate misstatement,

24  misrepresentation or omission").)

25

26          ///

27

28

1

## VI.

## PLATINTIFF IS ENTITLED TO EQUITABLE RELIEF AND WILL SUFFER

## IRREPARABLE HARM UNLESS THE INJUNCTION IS GRANTED

In the Federal case of <u>Demarest v. Quick Loan Funding, Inc.</u>, "The court may issue an injunction if the moving party establishes either (1) a combination of probable success on the merits **and** the possibility of irreparable harm or (2) the existence of serious questions going to the merits, a demonstration that there is at least a fair chance the movant will prevail, and a balance of hardships that tips sharply in the movant's favor. (Emphasis added) <u>Demarest</u> (April 2009) West Law 940377 (C.D.Cal.); No. CV 09-01687 MMM (SSx) (quoting <u>Miller for and on Behalf of N.L.R.B. v. California Pacific Medical</u> (1994) 19 F.3d 449, 456.) "[T]the greater the relative hardship to the moving party, the less probability of success must be shown." <u>Demarest v. Quick Loan Funding, Inc.</u>, (April 2009) West Law 940377 (C.D.Cal.) ; No. CV 09-01687 MMM (SSx) (quoting <u>National Ctr. For Immigrants Rights v. INS</u>. (1984) 743 F.2d 1365, 1369.)

In the present case, the relative hardship to Plaintiff, i.e., losing his home and being evicted from the property, represents irreparable injury, decreasing the probability that must be shown (though plaintiff contends he has established probability of success). The loss of one's residence due to foreclosure constitutes irreparable injury. <u>Demarest</u> 2009 West Law 940377 at 9, (quoting <u>Avila v. Stearns Lending Inc.</u>, (April 2008) West Law 1378231 (CD. Cal.); No. CV 08-0419-AG (CTx). The actual foreclosure of [plaintiff]'s residence and the imminent eviction from the property presents a threat of irreparable harm." <u>Nichols v. Deutche Bank Nat. Trust Co.</u>. (November 2007) West Law 4181111 (S.D.Cal.) at 3; Civil No. 07cv2039-L(NLS). "It may be said that if appellants proceed with the sale under the deed of trust, respondent will be deprived of this particular piece of property, and such damage may be considered irreparable for in equity each parcel of real property is considered unique." <u>Stockton v. Newman</u>, (1957)

---

1 | 148 Cal.App.2d 558, 564 (quoting Pomeroy, *Equity Jurisprudence*, Fifth Ed., Vol. 4, p. 1034,
2 | sec. 1402).

## VII.

### NO BOND SHOULD BE REQUIRED

Plaintiff respectfully contends that no bond is required as defendants' interest in the subject property is sufficient protected by their security interest therein.  In the alternative, plaintiffs respectfully request that a bond be imposed in the fair rental value of the property as determined by an impartial realtor with knowledge of said value in plaintiffs' neighborhood.

## VIII.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue a temporary restraining order and preliminary injunction to restrain and enjoin defendants from auctioning, selling, causing to be sold, transferring ownership or further encumbering the Subject Property to save Plaintiff from suffering irreparable harm.

Respectfully submitted,

**SIMON & RESNIK, LLP**

Dated: Oct. 1, 2012

By:_____
Matthew Resnik, Esq.
Attorneys for Plaintiff
ROBERT DE VICO

## **DECLARATION OF ROBERT DE VICO**

I, Robert De Vico, declare under penalty of perjury that the following is true and accurate to the best of my recollection:

On or about October 1, 2010, I called GMAC and spoke to "Rick", who identified himself as an employee in GMAC's Loss Mitigation Dept.  I requested a loan modification. Rick promised to send out a loan modification application package but never did.

Nor did anyone else from GMAC or any other defendant ever send me this package and I never received any loan modification package from GMAC.  In fact, every time I called GMAC, I requested this package, and was promised it would be mailed but it never did.

At no time did any GMAC, or any other defendant or entity for that matter, contact me at any time to explore "alternatives to foreclosure" as required by section 2923.5, much less at least 30 days prior to the recordation of the NOD.  I never received any such calls much less messages from GMAC or any other defendant.  I am familiar with defendant's 1-800 phone number and never received any such calls as reflected by GMAC's caller ID on his cell or home phones.  Nor did he receive any correspondence from said entities regarding said "alternatives to foreclosure" 30 or more days prior to the recordation of the NOD.

Specifically, I have a (1) cell phone with voice mail; (2) home phone (land line) with an answering machine; and (3) work telephone number -- each has caller ID and captures all missed calls, incoming calls and messages 24 hours a day, 7 days a week, 365 days a year.  Each has caller ID and captures all missed calls, incoming calls and messages 24 hours a day, 7 days a week, 365 days a year/

I also have an e-mail account, fax machine at home and work, and mail box slot in the subject property's front door to which no one but me can access.  At no time did Ihe ever receive any such communications.

I have always provided and updated these telephone & fax numbers and e-mail addresses to GMAC since I obtained the subject loan.

---

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT PROPERTY ON OCT. 3, 2011 @ 11:00 am

15

1

2  Date: Oct. 1, 2012            Executed in the City of Los Angeles, CA

3

4                               ROBERT DE VICO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW
CAUSE RE: PRELIMINARY INJUNCTION TO ENJOIN BANK FROM FORECLOSING ON THE SUBJECT
PROPERTY ON OCT. 3, 2011 @ 11:00 am

Exhibit "A"

This page is part of your document - DO NOT DISCARD

**05 2745537**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/15/05 AT 08:00am**

**TITLE(S) :**



L E A D     S H E E T

FEE    FEE $ 37⁰JJ
DAF $ 2⁰⁰
C-20                          D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

11/15/05

UNITED TITLE COMPANY/L.A.

After Recording Return To:
T.J. FINANCIAL, INC.
181 W. HUNTINGTON DR. #108
MONROVIA, CA 91016

05 2745537

LOAN NO. 2054459

105 10746.2

MIN: 100046120544590003

[Space Above This Line For Recording Data]

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **November 3, 2005,** together with all Riders to this document.

(B) "Borrower" is ROBERT DE VICO, AN UNMARRIED MAN.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is T.J. FINANCIAL, INC.   Lender is A CALIFORNIA CORPORATION, organized and existing under the laws of CALIFORNIA. Lender's address is
181 W. HUNTINGTON DR. #108, MONROVIA, CA 91016.

(D) "Trustee" is INVESTORS TITLE CORPORATION, A CALIFORNIA CORPORATION
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as herein after defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(E) "Note" means the promissory note signed by Borrower and dated **November 3, 2005.**   The Note states that Borrower owes Lender
FIVE HUNDRED SIXTY FIVE THOUSAND AND 00/100*****
Dollars (U.S. $   565,000.00   ) plus interest.   Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2035.**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ 1-4 Family Rider
- ☐ Other(s) [specify]
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider
- ☐ Graduated Payment Rider

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01 (page 1 of 11 pages)
*2054459*

11/15/05

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the county of        **LOS ANGELES**
[Name of Recording Jurisdiction]

THE SOUTHWESTERLY 22 FEET, MEASURED AT RIGHT ANGLES, OF LOT 8, AND ALL OF LOT 7, BOTH IN BLOCK 19 OF TRACT NO. 6450, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83 PAGES 31 THROUGH 40 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHWESTERLY 20 FEET, MEASURED AT RIGHT ANGLES, OF SAID LOT 7.

APN: 5581-025-008

which currently has the address of    3380 DERONDA DRIVE
[Street]
LOS ANGELES (HOLLYWOOD AREA)          , California    90068    ("Property Address"):
[City]                                              [Zip Code]

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01 (page 2 of 11 pages)
*2054459*
05  2745537

11/15/05

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

ROBERT DE VICO

[Space Below This Line for Acknowledgment]

State of California                                     County ss: LOS ANGELES

On ___11-07-2005___ Before me the undersigned,   AH-LAY TIOW, A NOTARY PUBLIC

personally appeared       ROBERT DE VICO ,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.              Signature _____(seal)
(This area for official notarial seal)

AH-LAY TIOW
COMM. # 1422943
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JULY 5, 2007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01 *(page 11 of 11 pages)*
*2054459*

05  2745537

Exhibit "B"

This page is part of your document - DO NOT DISCARD

## 20111672086





**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

12/12/11 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201112120190003

00005072632



003672135

**SEQ:**
**09**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

E1/11/19

Requested and Prepared by:
**Executive Trustee Services, LLC**

When Recorded Mail To:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**



12/12/2011
*20111672086*

11547556

Loan No.: 7440457893
TS NO: CA1100046646
MIN #: 100046120544590003
MERS Phone: 1-888-679-6377

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**U.S. Bank National Association as Trustee for RFMSI 2005S9**

all beneficial interest under that certain Deed of Trust dated: 11/03/2005 executed by ROBERT DE VICO, AN UNMARRIED MAN, as Trustor(s), to INVESTORS TITLE CORPORATION, as Trustee, and recorded as Instrument No. 05 2745537, on 11/15/2005, in Book XX , Page XX  of Official Records, in the office of the County Recorder of Los Angeles County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 12-2-11

12/12/11 FILED

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR T.J.
FINANCIAL, INC. Its successors and assigns

Tyrone Thorogood (Assistant Secretary)

State of Pennsylvania } ss.
County of Montgomery }

On 12\2\2011 before me, Paulina Maj          Notary Public, personally appeared
Tyrone Thorogood    who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of                                    that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
PAULINA MAJ, Notary Public
Horsham Twp., Montgomery County
My Commission Expires November 20, 2012

Exhibit "C"

RECORDING REQUESTED BY:

12/14/2011

**LSI TITLE COMPANY, INC.**

*20111686437*

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS NO : CA1100046646
LOAN NO : 7440457893

## SUBSTITUTION OF TRUSTEE

**WHEREAS, ROBERT DE VICO, AN UNMARRIED MAN** was the original Trustor, **INVESTORS TITLE CORPORATION** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR T.J. FINANCIAL, INC.** was the original Beneficiary under that certain Deed of Trust dated **11/03/2005** and recorded on **11/15/2005** as Instrument No. 05 2745537, in Book XX , Page XX of Official Records of Los Angeles County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _____12-5-11_____

U.S. Bank National Association as Trustee for RFMSI 2005S9 by Residential Funding Company, LLC, fka Residential Funding Corporation, as its Attorney In Fact

_Tyrone Thorogood_ Authorized Officer

State of  Pennsylvania  } ss.
County of  Montgomery  }

On  DEC 0 5 2011  before me,  **Mary Lynch**  Notary Public, personally appeared Tyrone Thorogood  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  **Pennsylvania**  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____Mary Lynch_____ (Seal)   COMMONWEALTH OF PENNSYLVANIA

Exhibit "D"

12/14/2011

*20111686438*

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 5581-025-008

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: CA1100046646      Loan No.: 7440457893

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $68,734.99 as of Dec 13, 2011, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
U.S. Bank National Association as Trustee for RFMSI 2005S9.
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone

TS NO.: CA1100046646          LOAN NO.: 7440457893          3

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **11/03/2005**, executed by **ROBERT DE VICO, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR T.J. FINANCIAL, INC.**, as beneficiary, recorded 11/15/2005, as Instrument No. 05 2745537, in Book XX , Page XX, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$565,000.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 10/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated: Dec 13, 2011

                                ETS Services, LLC as Agent for Beneficiary

                                BY: _____

                                Jennifer Esteban
                                TRUSTEE SALE OFFICER

Exhibit "E"

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

12/14/2011

*20111686437*

TS NO : CA1100046646
LOAN NO : 7440457893

SPACE ABOVE THIS LINE FOR RECORDER S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, ROBERT DE VICO, AN UNMARRIED MAN** was the original Trustor, **INVESTORS TITLE CORPORATION** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR T.J. FINANCIAL, INC.** was the original Beneficiary under that certain Deed of Trust dated **11/03/2005** and recorded on **11/15/2005** as Instrument No. **05 2745537**, in Book XX , Page XX of Official Records of Los Angeles County, California; and

**WHEREAS**, the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS**, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE**, the undersigned hereby substitutes **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: _____12-5-11_____

U.S. Bank National Association as Trustee for RFMSI 2005S9 by Residential Funding Company, LLC, fka Residential Funding Corporation, as its Attorney In Fact

Tyrone Thorogood  Authorized Officer

State of **Pennsylvania**          } ss.
County of **Montgomery**       }

On **DEC 0 5 2011** before me, **Mary Lynch** _____ Notary Public, personally appeared **Tyrone Thorogood** _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of **Pennsylvania** _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

COMMONWEALTH OF PENNSYLVANIA

Exhibit "F"



Home / Document ID: 1857530

# Pooling and Servicing Agreement

**Entities:** Cede & Co.; JPMorgan Chase Bank; Federal National Mortgage Association; Freddie Mac; McGraw-Hill Companies Inc.; Bank One, NA; First National Bank of Chicago; U.S. Bank, NA; Rfmsi Series 2005-S9 Trust

**Date:** 2006

**ID:** #1857530

Download Full Document

**Start of Document**

```
{DOCUMENT}
{TYPE}EX-10
{SEQUENCE}2
{FILENAME}s9ssfinal.txt
{DESCRIPTION}EX 10.1 SERIES SUPPLEMENT
{TEXT}
```
            RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC.,

                        Company,

            RESIDENTIAL FUNDING CORPORATION,

                    Master Servicer,

                        and

            U.S. BANK NATIONAL ASSOCIATION,

                        Trustee

                SERIES SUPPLEMENT,

            DATED AS OF DECEMBER 1, 2005

                        TO

                STANDARD TERMS OF

            POOLING AND SERVICING AGREEMENT

                DATED AS OF MAY 1, 2005

            Mortgage Pass-Through Certificates

                Series 2005-S9

```
{PAGE}

{TABLE}
{CAPTION}
```

                    TABLE OF CONTENTS

                                                    PAGE

```
{S}                                                   {C}
ARTICLE I.     DEFINITIONS...........................................4
        Section 1.01    Definitions..................................4
        Section 1.02    Use of Words and Phrases.....................17
        Section 1.03    Determination of LIBOR.......................17
ARTICLE II     ARTICLE II CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF
                CERTIFICATES........................................19
        Section 2.01    Conveyance of Mortgage Loans.................19
        Section 2.02    Acceptance by Trustee. (See Section 2.02 of the Standard
                        Terms)......................................19
        Section 2.03    Representations, Warranties and Covenants of the Master
                        Servicer and the Company....................19
        Section 2.04    Representations and Warranties of Sellers. (See Section 2.04
                        of the Standard Terms)......................22
        Section 2.05    Execution and Authentication of Class R-I Certificates........22
        Section 2.06    Conveyance of Uncertificated REMIC I and REMIC II Regular
                        Interests; Acceptance by the Trustee........22
        Section 2.07    Issuance of Certificates Evidencing Interest in REMIC II........22
        Section 2.08    Purposes and Powers of the Trust. (See Section 2.08 of the
                        Standard Terms).............................22
        Section 2.09    Agreement Regarding Ability to Disclose......22
ARTICLE III    ADMINISTRATION AND SERVICING OF MORTGAGE LOANS..........24
```

Section 3.01  Master Servicer to Act as Servicer...............................24
Section 3.02  Subservicing Agreements Between Master Servicer and
              Subservicers; Enforcement of Subservicers' and Sellers'
              Obligations.......................................................25
Section 3.03  Successor Subservicers. (See Section 3.03 of the Standard
              Terms)............................................................26
Section 3.04  Liability of the Master Servicer. (See Section 3.04 of the
              Standard Terms)...................................................26
Section 3.05  No Contractual Relationship Between Subservicer and Trustee
              or Certificateholders. (See Section 3.05 of the Standard
              Terms)............................................................26
Section 3.06  Assumption or Termination of Subservicing Agreements by
              Trustee...........................................................26
Section 3.07  Collection of Certain Mortgage Loan Payments; Deposits to
              Custodial Account. (See Section 3.07 of the Standard Terms)......26
Section 3.08  Subservicing Accounts; Servicing Accounts........................26
Section 3.09  Access to Certain Documentation and Information Regarding
              the Mortgage Loans. (See Section 3.09 of the Standard Terms)......27
Section 3.10  Permitted Withdrawals from the Custodial Account.................27
Section 3.11  Maintenance of the Primary Insurance Policies; Collections
              Thereunder. (See Section 3.11 of the Standard Terms).............29
Section 3.12  Maintenance of Fire Insurance and Omissions and Fidelity
              Coverage. (See Section 3.12 of the Standard Terms)...............29
Section 3.13  Enforcement of Due-on-Sale Clauses; Assumption and
              Modification Agreements; Certain Assignments. (See Section
              3.13 of the Standard Terms).......................................29
Section 3.14  Realization Upon Defaulted Mortgage Loans........................29
Section 3.15  Trustee to Cooperate; Release of Mortgage Files. (See
              Section 3.15 of the Standard Terms)..............................31
Section 3.16  Servicing and Other Compensation; Compensating Interest.
              (See Section 3.16 of the Standard Terms).........................31
Section 3.17  Reports to the Trustee and the Company. (See Section 3.17 of
              the Standard Terms)...............................................31
Section 3.18  Annual Statement as to Compliance. (See Section 3.18 of the
              Standard Terms)...................................................31
Section 3.19  Annual Independent Public Accountants' Servicing Report.
              (See Section 3.19 of the Standard Terms).........................32
Section 3.20  Rights of the Company in Respect of the Master Servicer.
              (See Section 3.20 of the Standard Terms).........................32
Section 3.21  Administration of Buydown Funds. (See Section 3.21 of the
              Standard Terms)...................................................32
Section 3.22  Advance Facility. (See Section 3.22 of the Standard Terms).......32
ARTICLE IV    PAYMENTS TO CERTIFICATEHOLDERS....................................33
Section 4.01  Certificate Account. (See Section 4.01 of the Standard Terms)....33
Section 4.02  Distributions....................................................33
Section 4.03  Statements to Certificateholders; Statements to Rating
              Agencies; Exchange Act Reporting. (See Section 4.03 of the
              Standard Terms)...................................................43
Section 4.04  Distribution of Reports to the Trustee and the Company;
              Advances by the Master Servicer. (See Section 4.04 of the
              Standard Terms)...................................................43
Section 4.05  Allocation of Realized Losses....................................43
Section 4.06  Reports of Foreclosures and Abandonment of Mortgaged
              Property. (See Section 4.06 of the Standard Terms)...............45
Section 4.07  Optional Purchase of Defaulted Mortgage Loans....................45
Section 4.08  Surety Bond. (See Section 4.08 of the Standard Terms)............46
ARTICLE V     THE CERTIFICATES.................................................47
Section 5.01  The Certificates.................................................47
Section 5.02  Registration of Transfer and Exchange of Certificates. (See
              Section 5.02 of the Standard Terms)..............................48
Section 5.03  Mutilated, Destroyed, Lost or Stolen Certificates. (See
              Section 5.03 of the Standard Terms)..............................48
Section 5.04  Persons Deemed Owners. (See Section 5.04 of the Standard
              Terms)............................................................48
Section 5.05  Appointment of Paying Agent. (See Section 5.05 of the
              Standard Terms)...................................................48
ARTICLE VI    THE COMPANY AND THE MASTER SERVICER (See Article VI of the Standard
              Terms)............................................................49
ARTICLE VII   DEFAULT (See Article VII of the Standard Terms)..................50
ARTICLE VIII  CONCERNING THE TRUSTEE (See Article VIII of the Standard Terms)..51
ARTICLE IX    TERMINATION......................................................52
Section 9.01  Optional Purchase by the Master Servicer of All
              Certificates; Termination Upon Purchase by the Master
              Servicer or Liquidation of All Mortgage Loans....................52
Section 9.02  Additional Termination Requirements. (See Section 9.02 of
              the Standard Terms)...............................................53
Section 9.03  Termination of Multiple REMICs. (See Section 9.03 of the
              Standard Terms)...................................................53
ARTICLE X     REMIC PROVISIONS.................................................54
Section 10.01 REMIC Administration. (See Section 10.01 of the Standard
              Terms)............................................................54
Section 10.02 Master Servicer, REMIC Administrator and Trustee
              Indemnification. (See Section 10.02 of the Standard Terms).......54
Section 10.03 Designation of REMIC(s)..........................................54
Section 10.04 Distributions on the Uncertificated REMIC I Regular
              Interests 2......................................................54
Section 10.05 Compliance with Withholding Requirements.........................56
ARTICLE XI    MISCELLANEOUS PROVISIONS.........................................57
Section 11.01 Amendment. (See Section 11.01 of the Standard Terms).............57
Section 11.02 Recordation of Agreement, Counterparts. (See Section 11.02
              of the Standard Terms)............................................57
Section 11.03 Limitation on Rights of Certificateholders. (See Section
              11.03 of the Standard Terms).....................................57
Section 11.04 Governing Laws. (See Section 11.04 of the Standard Terms).......57

Section 11.05    Notices.................................................57
Section 11.06    Required Notices to Rating Agency and Subservicer...........58
Section 11.07    Severability of Provisions. (See Section 11.07 of the
                 Standard Terms)........................................59
Section 11.08    Supplemental Provisions for Resecuritization. (See Section
                 11.08 of the Standard Terms)...........................59
Section 11.09    Allocation of Voting Rights............................59
Section 11.10    No Petition............................................59

{PAGE}

EXHIBITS

Exhibit One:    Mortgage Loan Schedule (Available from the Company upon request.)
Exhibit Two:    Schedule of Discount Fractions (Available from the Company upon request.)
Exhibit Three:  Information to be Included in Monthly Distribution Date Statement
Exhibit Four:   Standard Terms of Pooling and Servicing Agreement dated as of May 1, 2005

{/TABLE}

{PAGE}

This is a Series Supplement, dated as of December 1, 2005 (the "Series Supplement"), to the Standard Terms of Pooling and Servicing Agreement, dated as of May 1, 2005 and attached as Exhibit Four hereto (the "Standard Terms" and, together with this Series Supplement, the "Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL FUNDING MORTGAGE SECURITIES I, INC., as the Company (together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING CORPORATION, as master servicer (together with its permitted successors and assigns, the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, as Trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT

The Company intends to sell Mortgage Pass-Through Certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund. As provided herein, the REMIC Administrator will make an election to treat the entire segregated pool of assets described in the definition of Trust Fund, and subject to this Agreement (including the Mortgage Loans but excluding the Initial Monthly Payment Fund), as a real estate mortgage investment conduit (the "REMIC") for federal income tax purposes and such segregated pool of assets will be designated as "REMIC I." The Uncertificated REMIC Regular I Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein). A segregated pool of assets consisting of the Uncertificated REMIC I Regular Interests will be designated as "REMIC II," and the REMIC Administrator will make a separate REMIC election with respect thereto. The Class A-1 Certificates, Class A-2 Certificates, Class A-3 Certificates, Class A-4 Certificates, Class A-5 Certificates, Class A-6 Certificates, Class A-7 Certificates, Class A-8 Certificates, Class A-9 Certificates, Class A-10 Certificates, Class A-11 Certificates, the Class A-12 Certificates, Class A-P Certificates, Class M-1 Certificates, Class M-2 Certificates, Class M-3 Certificates, Class B-1 Certificates, Class B-2 Certificates, Class B-3 Certificates and the Uncertificated REMIC II Regular Interests Z will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions. The Class A-V Certificates will represent the entire beneficial ownership interest in the Uncertificated REMIC I Regular Interests Z.

The terms and provisions of the Standard Terms are hereby incorporated by reference herein as though set forth in full herein. If any term or provision contained herein shall conflict with or be inconsistent with any provision contained in the Standard Terms, the terms and provisions of this Series Supplement shall govern. Any cross-reference to a section of the Pooling and Servicing Agreement, to the extent the terms of the Standard Terms and Series Supplement conflict with respect to that section, shall be a cross-reference to the related section of the Series Supplement. All capitalized terms not otherwise defined herein shall have the meanings set forth in the Standard Terms. The Pooling and Servicing Agreement shall be dated as of the date of the Series Supplement.

The following table sets forth the designation, type, Pass-Through Rate, aggregate Initial Certificate Principal Balance, Maturity Date, initial ratings and certain features for each Class of Certificates comprising the interests in the Trust Fund created hereunder.

{TABLE}
{CAPTION}

| DESIGNATION | PASS-THROUGH RATE | AGGREGATE INITIAL CERTIFICATE PRINCIPAL BALANCE | FEATURES(1) | MATURITY DATE | MOODY'S/ S&P/FITCH | MINIMUM DENOMINATIONS(2) |
|---|---|---|---|---|---|---|
| {S}   {C} | {C} | {C} | | | {C} | {C} |
| Class A-1 | Adjustable | $103,066,220.00 | Senior/Floater/Adjustable Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |

| | Rate | | | | | | |
|---|---|---|---|---|---|---|---|
| Class A-2 | Adjustable Rate | $17,924,560.00 | Senior/Inverse Floater/Adjustable Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-3 | 5.75% | $49,879,000.00 | Super Senior/ Fixed Rate | December, 2035 | Aaa/AAA | $100,000.00 |
| Class A-4 | 5.75% | $1,871,320.00 | Senior Support/ Fixed Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-5 | 5.75% | $81,289,900.00 | Senior/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-6 | 5.75% | $32,000,000.00 | Super Senior/Lockout/Fixed Rate | December, 2035 | Aaa/AAA | $100,000.00 |
| Class A-7 | 5.75% | $5,716,000.00 | Senior Support/Lockout/Fixed Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-8 | 5.50% | $15,986,000.00 | Super Senior/Accretion Directed/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-9 | 5.50% | $21,160,000.00 | Super Senior/Accrual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-10 | 6.25% | $15,000,000.00 | Senior/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-11 | 6.25% | $4,200,000.00 | Senior/Retail/Fixed Rate | December, 2035 | Aaa/AAA/AAA | $1,000.00 |
| Class A-12 | 5.50% | $1,254,000.00 | Senior Support/Accretion Directed Fixed/Rate | December, 2035 | Aa1/AAA/AAA | $100,000.00 |
| Class A-P | 0.00% | $3,504,096.32 | Senior/Principal Only | December, 2035 | Aaa/AAA/AAA | $100,000.00 |
| Class A-V | Variable Rate(3) | Notional | Senior/Interest Only/Variable | December, 2035 | Aaa/AAA/AAA | $2,000,000.00 |
| Class R-I | 5.75% | $100.00 | Senior/Residual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | (4) |
| Class R-II | 5.75% | $100.00 | Senior/Residual/Fixed Rate | December, 2035 | Aaa/AAA/AAA | (4) |
| Class M-1 | 5.75% | $7,515,400.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/AA | $100,000.00 |
| Class M-2 | 5.75% | $2,382,900.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/A | $250,000.00 |
| Class M-3 | 5.75% | $1,466,400.00 | Mezzanine/Fixed Rate | December, 2035 | NA/NA/BBB | $250,000.00 |
| Class B-1 | 5.75% | $916,500.00 | Subordinate/Fixed Rate | December, 2035 | NA/NA/BB | $250,000.00 |
| Class B-2 | 5.75% | $549,900.00 | Subordinate/Fixed Rate | December, 2035 | NA/NA/B | $250,000.00 |
| Class B-3 | 5.75% | $916,565.37 | Subordinate/Fixed Rate | December, 2035 | NA/NA/NA | $250,000.00 |

[/TABLE]

--------

(1)     The Certificates, other than the Class B and Class R Certificates shall
        be Book-Entry Certificates. The Class B Certificates and the Class R
        Certificates shall be delivered to the holders thereof in physical form.

(2)     The Certificates, other than the Class R Certificates, shall be issuable
        in minimum dollar denominations as indicated above (by Certificate
        Principal Balance or Notional Amount, as applicable) and integral
        multiples of $1 (or $1,000 in the case of the Class B-1, Class B-2 and
        Class B-3 Certificates) in excess thereof, except that one Certificate
        of any of the Class B-1, Class B-2 and Class B-3 Certificates that
        contain an uneven multiple of $1,000 shall be issued in a denomination
        equal to the sum of the related minimum denomination set forth above and
        such uneven multiple for such Class or the sum of such denomination and
        an integral multiple of $1,000.

(3)     The initial Pass-Through Rate on the Class A-V Certificates is 0.1674%.

(4)     The Class R Certificates shall be issuable in minimum denominations of
        not less than a 20% Percentage Interest; provided, however, that one
        Class R Certificate will be issuable to Residential Funding as "tax
        matters person" pursuant to Section 10.01(c) and (e) in a minimum
        denomination representing a Percentage Interest of not less than 0.01%.

[PAGE]

        The Mortgage Loans have an aggregate principal balance as of the Cut-off
Date of $366,598,962.

        In consideration of the mutual agreements herein contained, the Company,
the Master Servicer and the Trustee agree as follows:

[PAGE]

ARTICLE I

                              DEFINITIONS

Section 1.01...Definitions.

        Whenever used in this Agreement, the following words and phrases, unless
the context otherwise requires, shall have the meanings specified in this
Article.

        Accretion Termination Date: The earlier of (a) the Distribution Date on
which the aggregate Certificate Principal Balance of the Class A-8 Certificates
and Class A-12 Certificates is reduced to zero and (b) the Credit Support
Depletion Date.

        Accrual Certificates:  The Class A-9 Certificates.

        Accrual Distribution Amount: With respect to each Distribution Date
preceding the Accretion Termination Date, an amount equal to the amount of
Accrued Certificate Interest on the Class A-9 Certificates that is added to the
Certificate Principal Balance of the Class A-9 Certificates, on such
Distribution Date pursuant to Section 4.02(h).

        Adjustable Rate Certificates: Any one of the Class A-1 Certificates and
Class A-2 Certificates.

        Bankruptcy Amount: As of any date of determination prior to the first
anniversary of the Cut-off Date, an amount equal to the excess, if any, of (A)

Pooling and Servicing Agreement : The Consus Group

$100,000 over (B) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 of this Series Supplement. As of any date of determination on or after the first anniversary of the Cut-off Date, an amount equal to the excess, if any, of

(1) the lesser of (a) the Bankruptcy Amount calculated as of the close of business on the Business Day immediately preceding the most recent anniversary of the Cut-off Date coinciding with or preceding such date of determination (or, if such date of determination is an anniversary of the Cut-off Date, the Business Day immediately preceding such date of determination) (for purposes of this definition, the "Relevant Anniversary") and (b) the greater of

(A) the greater of (i) 0.0006 times the aggregate principal balance of all the Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary (other than Additional Collateral Loans, if any) having a Loan-to-Value Ratio at origination which exceeds 75% and (ii) $100,000; and

(B) the greater of (i) the product of (x) an amount equal to the largest difference in the related Monthly Payment for any Non-Primary Residence Loan remaining in the Mortgage Pool (other than Additional Collateral Loans, if any) which had an original Loan-to-Value Ratio of 80% or greater that would result if the Net Mortgage Rate thereof was equal to the weighted average (based on the principal balance of the Mortgage Loans as of the Relevant Anniversary) of the Net Mortgage Rates of all Mortgage Loans as of the Relevant Anniversary less 1.25% per annum, (y) a number equal to the weighted average remaining term to maturity, in months, of all Non-Primary Residence Loans remaining in the Mortgage Pool as of the Relevant Anniversary, and (z) one plus the quotient of the number of all Non-Primary Residence Loans remaining in the Mortgage Pool divided by the total number of Outstanding Mortgage Loans in the Mortgage Pool as of the Relevant Anniversary, and (ii) $100,000,

over

(2) the aggregate amount of Bankruptcy Losses allocated solely to one or more specific Classes of Certificates in accordance with Section 4.05 since the Relevant Anniversary.

The Bankruptcy Amount may be further reduced by the Master Servicer (including accelerating the manner in which such coverage is reduced) provided that prior to any such reduction, the Master Servicer shall (i) obtain written confirmation from each Rating Agency that such reduction will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency and (ii) provide a copy of such written confirmation to the Trustee.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the State of New York, the State of Michigan, the State of California, the State of Illinois or the City of St. Paul, Minnesota (and such other state or states in which the Custodial Account or the Certificate Account are at the time located) are required or authorized by law or executive order to be closed.

Certificate: Any Class A, Class M, Class B or Class R Certificate.

Certificate Account: The separate account or accounts created and maintained pursuant to Section 4.01 of the Standard Terms, which shall be entitled "U.S. Bank National Association, as trustee, in trust for the registered holders of Residential Funding Mortgage Securities I, Inc., Mortgage Pass-Through Certificates, Series 2005-S9" and which must be an Eligible Account.

Class A Certificate: Any one of the Class A-1, Class A-2, Class A-3, Class A-4, Class A-5, Class A-6, Class A-7, Class A-8, Class A-9, Class A-10, Class A-11, Class A-12, Class A-P or Class A-V Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-3 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is the Certificate Principal Balance of the Class A-3 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that Distribution Date.

Class A-3 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-3 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-6/A-9 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is sum of the Certificate Principal Balances of the Class A-6 and Class A-9 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that distribution date.

Class A-6/A-9 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-6/A-9 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-8 Optimal Percentage: As to any Distribution Date on or after the Credit Support Depletion Date, a fraction expressed as a percentage, the numerator of which is the Certificate Principal Balance of the Class A-8 Certificates immediately prior to that Distribution Date and the denominator of which is the aggregate Certificate Principal Balance of the Senior Certificates (other than the Class A-P Certificates) immediately prior to that Distribution Date.

Class A-8 Optimal Principal Distribution Amount: As to any Distribution Date on or after the Credit Support Depletion Date, an amount equal to the product of (a) the then applicable Class A-8 Optimal Percentage and (b) the amounts described in clause (b) of the definition of Senior Principal Distribution Amount.

Class A-8/A-9/A-12 Percentage: With respect to any Distribution Date, a fraction expressed as a percentage, the numerator of which is an amount equal to the aggregate Certificate Principal Balance of the Class A-8, Class A-9, and Class A-12 Certificates immediately prior to that Distribution Date, and the denominator of which is an amount equal to the aggregate Certificate Principal Balance of the Class A-8, Class A-9, Class A-10, Class A-11 and Class A-12 Certificates immediately prior to that Distribution Date.

Class A-10/A-11 Percentage: With respect to any Distribution Date, a percentage equal to 100% minus the Class A-8/A-9/A-12 Percentage as of that Distribution Date.

Class R Certificate: Any one of the Class R-I or Class R-II Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit D and evidencing an interest designated as a "residual interest" in the related REMIC for purposes of the REMIC Provisions.

Closing Date: December 29, 2005.

Corporate Trust Office: The principal office of the Trustee at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at U.S. Bank National Association, U.S. Bank Corporate Trust Services, EP-MN-WS3D, 60 Livingston Avenue, St. Paul, Minnesota 55107, Attention: RFMSI 2005-S9.

Cut-off Date: December 1, 2005.

Determination Date: With respect to any Distribution Date, the second Business Day prior to such Distribution Date.

Discount Net Mortgage Rate: 5.75% per annum.

Due Period: With respect to each Distribution Date and any Mortgage Loan, the calendar month of such Distribution Date.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the debt obligations of which have been rated by each Rating Agency in its highest rating available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Trustee and each Rating Agency) the registered Holders of Certificates have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Custodial Account, a trust account or accounts maintained in the corporate trust department of U.S. Bank National Association, or (iv) in the case of the Certificate Account, a trust account or accounts maintained in the corporate trust division of the Trustee, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account as the Custodial Account or the Certificate Account will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency).

Eligible Funds: On any Distribution Date, the portion, if any, of the Available Distribution Amount remaining after reduction by the sum of (i) the aggregate amount of Accrued Certificate Interest on the Senior Certificates, (ii) the Senior Principal Distribution Amount (determined without regard to Section 4.02(a)(ii)(Y)(D) of this Series Supplement), (iii) the Class A-P Principal Distribution Amount (determined without regard to Section 4.02(b)(i)(E) of this Series Supplement) and (iv) the aggregate amount of Accrued Certificate Interest on the Class M, Class B-1 and Class B-2 Certificates.

Floater Certificates: The Class A-1 Certificates.

Fraud Loss Amount: As of any date of determination after the Cut-off