1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DE VICO, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>U.S. BANK, a corporation; GMAC<br>MORTGAGE U.S.A. CORPORATION,<br>a corporation; ETS SERVICES, LLC, a<br>limited liability company, and Does 1-10,<br>inclusive,<br><br>                    Defendants. | CASE NO. CV 12-08440 MMM (FFMx)<br><br>PRELIMINARY INJUNCTION ORDER |

On October 9, 2012, plaintiff Robert De Vico filed an *ex parte* application for a temporary restraining order, seeking to enjoin defendants U.S. Bank, GMAC Mortgage U.S.A. Corporation, ETS Services, and certain fictitious defendants from foreclosing on his house.  The parties stipulated to postpone the sale of De Vico's home until October 30, 2012, allowing defendants time to oppose the application.  Defendants filed an opposition on October 16, 2012, and the matter was heard on October 29, 2012.

1  Based on its finding that plaintiff had demonstrated a likelihood of success on the merits
2  of his claim that defendants violated California Civil Code § 2923.5, and the possibility of
3  irreparable harm, the court granted plaintiff's motion for a preliminary injunction to enjoin
4  defendants from foreclosing on his home.

5

6  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7  Pursuant to Rules 52 and 65 of the Federal Rules of Civil Procedure, the court adopts as
8  the findings of fact and conclusions of law supporting its entry of a preliminary injunction its order
9  granting plaintiffs' motion for a preliminary injunction dated October 29, 2012.  A copy of the
10 court's October 29, 2012 order is attached hereto as Exhibit "A," and incorporated herein as
11 though fully set forth.

12

13 **PRELIMINARY INJUNCTION**

14 In accordance with the court's findings of fact and conclusions of law, IT IS HEREBY
15 ORDERED that during the pendency of this action, defendants are enjoined from foreclosing on
16 plaintiff's house.

17 This injunction is effective immediately upon proof that by 10:00 a.m. on October 30,
18 2012, plaintiff has placed $3,000 in the trust account of defendants' attorney.  Plaintiff must place
19 $3,000 in the trust account on the first of every month thereafter, beginning December 1, 2012,
20 until this matter is resolved.

21

22 DATED: October 29, 2012
                                                    _____
23                                                  MARGARET M. MORROW
                                                    UNITED STATES DISTRICT JUDGE
24

25

26

27

28

1

2

3

4

5

6                                      EXHIBIT A

7                         UNITED STATES DISTRICT COURT

8                        CENTRAL DISTRICT OF CALIFORNIA

9

10

11   ROBERT DE VICO, an individual,        )   CASE NO. CV 12-08440 MMM (FFMx)
                                           )
12                         Plaintiff,      )   ORDER GRANTING PLAINTIFFS'
                                           )   APPLICATION FOR PRELIMINARY
13              vs.                        )   INJUNCTION
                                           )
14   U.S. BANK, a corporation; GMAC        )
     MORTGAGE U.S.A. CORPORATION,          )
15   a corporation; ETS SERVICES, LLC, a   )
     limited liability company, and Does 1-10, )
16   inclusive                             )
                                           )
17                         Defendants.     )

18   ─────────────────────────────

19       Robert De Vico filed this action on October 2, 2012 against U.S. Bank, N.A., GMAC

20   Mortgage, ETS Services, and several fictitious defendants.[1]  The complaint alleges claims for

21   wrongful foreclosure, slander of title, and violation of 12 U.S.C. § 2605(e).[2]  That same day,

22   plaintiff filed an application for temporary restraining order seeking to prevent defendants from

23

24

25   ─────────────────

26       [1]Complaint Against Defendants U.S. Bank NA, GMAC Mortgage Corp., ETS Services

27   LLC, and Does 1 to 10, Inclusive ("Complaint"), Docket No. 1 (Oct. 2, 2012).

28       [2]*Id*. at 1.

foreclosing on his house.[3]  Because De Vico had not filed proofs of service, his application was denied without prejudice.[4]  Plaintiff thereafter submitted proofs of service on U.S. Bank,[5] GMAC[6], and ETS,[7] and refiled his application for a restraining order.[8]  The parties stipulated to postpone the sale of De Vico's house until October 30, 2012, allowing defendants time to oppose the application.

As noted, De Vico alleges claims for wrongful foreclosure; slander of title; and violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).  He seeks preliminary and permanent injunctive relief, a judgment canceling various loan instruments, and an order quieting title to his property.

# I.  BACKGROUND

De Vico received title to property located at 3380 Deronda Drive, Los Angeles, California 90038 ("the subject property") on January 9, 2001.[9]  On November 3, 2005, he obtained a loan

---

[3]*Ex Parte* Application for Temporary Restraining Order ("Application"), Docket No. 2 (Oct. 2, 2012).

[4]Minutes Order Denying *Ex Parte* Application for Temporary Restraining Order, Docket No. 7 (Oct. 5, 2012).

[5]Proof of Service on U.S. Bank, Docket No. 15 (Oct. 5, 2012).

[6]Proof of Service on GMAC, Docket No. 13 (Oct. 5, 2012).

[7]Proof of Service on ETS, Docket No. 12, (Oct. 4, 2012).

[8]*Ex Parte* Application for Temporary Restraining Order ("Application"), Docket No. 17 (Oct. 9, 2012).

[9]Defendants' Request for Judicial Notice ("RJN"), Exh. A, Docket No. 24 (Oct. 16, 2012). A court can take judicial notice of "matters of public record." *Lee v. City of Los Angeles* , 250 F.3d 668, 688-89 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record'").  See also FED.R.EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Certified copies of public records are self-authenticating. See FED.R.EVID . 902(4). Here, the records that defendants have submitted are certified by the Los Angeles County Recorder's Office.  Therefore, the court takes judicial

2

from T.J. Financial, which was secured by a deed of trust on the subject property.[10]  The deed of trust was recorded and named MERS as the beneficiary, acting solely as the nominee for the lender.[11]

On December 12, 2011, an assignment of the deed of trust was recorded, which transferred all beneficial interest in the deed of trust to U.S. Bank as trustee "for RMFSI 2005S9."[12]  Two days later, a substitution of trustee was recorded, pursuant to which ETS became the trustee under the deed of trust.[13]  On October 1, 2012, ETS recorded a notice of default and election to sell the property under the deed of trust.[14]  On March 16, 2012, a notice of trustee's sale was recorded in the Los Angeles County Recorder's Office.[15]

De Vico asserts that the loan was improperly transferred to U.S. Bank, and thus that defendants have no authority to foreclose on the property.[16]  He also contends that defendants failed to fulfill their obligation to communicate with De Vico regarding his default under California Civil Code § 2923.5.[17]

## II.  DISCUSSION

### A.    Standard Governing Preliminary Injunctive Relief

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553

---

notice of the records.

[10]RJN, Exh. B.

[11]*Id.*

[12]*Id.*, Exh. C.

[13]*Id.*, Exh. D.

[14]*Id.*, Exh. E.

[15]*Id.*, Exh. F.

[16]Complaint, ¶¶ 90, 91

[17]*Id.*, ¶¶ 77-79.

3

1   U.S. 674, 676 (2008).  Thus, a district court should enter a preliminary injunction only "upon a

2   clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense*

3   *Council, Inc.*, 555 U.S. 7, 22 (2008).   Such a showing requires that plaintiff establish he "is

4   likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

5   preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

6   public interest."  *Winter*, 555 U.S. at 20.  See *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021

7   (9th Cir. 2009) ("Under *Winter*, plaintiffs seeking a preliminary injunction must establish that

8   (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the

9   absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary

10  injunction is in the public interest").   See also *Stormans, Inc. v. Selecky*, 586 F.3d  1109, 1138

11  (9th Cir. 2009) ("To qualify for injunctive relief, the plaintiffs must establish that the balance of

12  equities tips in [their] favor"); *American Trucking Associations, Inc. v. City of Los Angeles*, 559

13  F.3d 1046, 1052 (9th Cir. 2009) ("A plaintiff seeking a preliminary injunction must establish that

14  he is likely to succeed on the merits," citing *Winter*, 555 U.S. at 20); *Timbisha Shoshone Tribe*

15  *v. Kennedy*, 687 F.Supp.2d 1171, 1182 (E.D. Cal. 2009) ( "Pursuant to *Winter*, [p]laintiffs must

16  make a 'clear showing' that they are 'likely to succeed on the merits,'"  quoting *Winter*, 555 U.S.

17  at 22).  Interpreting *Winter*, the Ninth Circuit has held that its pre-*Winter* "sliding scale" test for

18  preliminary injunctions remains valid.  So long as plaintiff satisfies the remaining *Winter* factors,

19  it is appropriate to grant preliminary injunctive relief if the plaintiff demonstrates that there are

20  serious questions going to the merits and that the balance of hardships tips sharply in plaintiff's

21  favor.  See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); see

22  also *McCormack v. Hiedman*, 694 F.3d 1004, 1016 n. 7 (9th Cir. 2012) (stating that the "sliding

23  scale" approach remains valid); *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (quoting

24  *Cottrell*).

25        "[P]reliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable

26  injury is likely in the absence of an injunction.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th

27

28

Cir. 2009) (quoting *Winter*, 555 U.S. at 22).[18]  If the harm to plaintiff is merely monetary, it "will not usually support injunctive relief." *American Trucking*, 559 F.3d at 1057.  See also *California Pharmacists Association v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable harm. . . .  Economic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*" (emphasis original)).  In addition, harm that is "merely speculative" will not support injunctive relief, "although a loss of goodwill and reputation can do so." *American Trucking*, 559 F.3d at 1057.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 55. "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).[19]

---

[18]Prior to the Supreme Court's decision in *Winter*, the Ninth Circuit had held that to prevail on a motion for preliminary injunction, a plaintiff must demonstrate either:

> "either: (1) a likelihood of success on the merits and the *possibility* of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. These two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown." *Stormans*, 586 F.3d at 1126-27 (quoting *Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003) (emphasis original)).

The *Winter* Court "definitively refuted" the Ninth Circuit's "possibility of irreparable injury" standard. *Id.* It held that "the Ninth Circuit's 'possibility' standard is too lenient.  Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original). Following *Winter*, the Ninth Circuit has held that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *American Trucking*, 559 F.3d at 1052 (footnote omitted).

[19]The *Winter* Court cautioned that "'*consideration of the public interest*' is mandatory 'in assessing the propriety of any injunctive relief.'" *Nelson v. National Aeronautics and Space*

1   "The public interest analysis for the issuance of a preliminary injunction requires [the

2   court] to consider 'whether there exists some critical public interest that would be injured by the

3   grant of preliminary relief.'"  *Maxwell-Jolly*, 572 F.3d at 659 (quoting *Hybritech Inc. v. Abbott*

4   *Laboratories*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)).   "When the reach of an injunction is

5   narrow, limited only to the parties, and has no impact on non-parties, the public interest will be

6   'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the

7   preliminary injunction.'"  *Stormans*, 586 F.3d at 1138-39 (quoting *Bernhardt v. L.A. County*, 339

8   F.3d 920, 931 (9th Cir. 2003)).   "If, however, the impact of an injunction reaches beyond the

9   parties, carrying with it a potential for public consequences, the public interest will be relevant

10  to whether the district court grants the preliminary injunction."  *Id.* at 1139 (citing *Sammartano*

11  *v. First Judicial District Court*, 303 F.3d 959, 965 (9th Cir. 2002)).   See also *Sierra Forest*

12  *Legacy*, 577 F.3d at 1022 ("When deciding whether to issue a narrowly tailored injunction,

13  district courts must assess the harms pertaining to injunctive relief in the context of that narrow

14  injunction").   "[When] an injunction is asked which will adversely affect a public interest . . . the

15  court may in the public interest withhold relief until a final determination of the rights of the

16  parties, though the postponement may be burdensome to the plaintiff."  *Weinberger*, 456 U.S. at

17  312-13.

18          "The plaintiffs bear the initial burden of showing that [issuance of an] injunction is in the

19  public interest."  *Stormans*, 586 F.3d at 1139.  The district court, however, "need not consider

20  public consequences that are 'highly speculative.'"  *Id.* (quoting  *Golden Gate Restaurant*

21  *Association v. City & County of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).   "In other

22  words, the court should weigh the public interest in light of the likely consequences of the

23  injunction.  Such consequences must not be too remote, insubstantial, or speculative and must be

24  supported by evidence."  *Id.*   "The likelihood of confusion to consumers is [a] critical factor in

25  our consideration" of harm to the public, as "[t]he public has an interest in avoiding confusion

26  _____

27  *Administration*, 568 F.3d 1028, 1050 (9th Cir. 2009) (Kleinfeld, J., dissenting from denial of

28  rehearing en banc) (quoting *Winter*, 555 U.S. at 32 (emphasis original)).

1   between two companies' products." *Internet Specialties West, Inc. v. Milon-DiGiorgio*

2   *Enterprises, Inc.*, 559 F.3d 985, 995 n. 5 (9th Cir. 2009).[20]

3   **B.     De Vico's Likelihood of Success on the Merits**

4          De Vico asserts claims, *inter alia*, for wrongful foreclosure, slander of title, cancellation

5   of instruments, quiet title and declaratory relief.   These claims are based on the underlying

6   premise that defendants lack the authority to initiate foreclosure proceedings due to an improper

7   transfer of De Vico's loan.   De Vico asserts that he had "reasonable confusion over the identity

8   of the holder in due course [of the note]," and is therefore excused from repaying the loan.[21]   In

9   essence, De Vico contends that he "has the right to know which if any of said entities are entitled

10  to receive and retain payments on the subject loan."[22]

11          **i.     De Vico's Claim under Civil Code § 2923.5**

12         Although De Vico's complaint asserts that defendants lacked authority to foreclose, his

13  motion for preliminary injunction focuses primarily on his allegation that defendants violated

14  California Civil Code § 2923.5.[23]   That statute provides, in pertinent part:

15         "A mortgagee, beneficiary, or authorized agent shall contact the borrower in person

16  _____

17         [20]After *Winter*, a district court cannot take an "an all-or-nothing approach to assessing the
18  harms." *Sierra Forest Legacy*, 577 F.3d at 1022.   Instead, the court must "address[ ] the options
    actually on the table." *Id.*   In *Winter*, this meant addressing whether, given the fact that four
19  restrictions on defendant's conduct were already in place, irreparable injury was likely to occur
    absent an injunction that included two additional restrictions. *Winter*, 555 U.S. at 23.   In *Sierra*
20  *Forest Legacy*, the Ninth Circuit reversed a district court's analysis and application of the non-
21  merits injunctive relief factors that "boiled down to a choice between" allowing the Forest Service
    to move ahead with a framework developed in 2004 or requiring that it take no action at all with
22  respect to fire prevention.   The Ninth Circuit held that the district court erred by failing to
23  consider whether a narrower injunction, such as one allowing the Forest Service to proceed under
    an unchallenged framework developed in 2001, would have served to prevent otherwise likely
24  irreparable injury. *Sierra Forest Legacy*, 577 F.3d at 1022-23.

25         [21]Complaint, ¶¶ 72, 92

26         [22]*Id.*, ¶ 92.

27         [23]Application at 7.   Notably, defendants omit any discussion of § 2923.5 from their
28  opposition brief.

or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days." CAL. CIV. CODE § 2923.5(a)(2)

"If section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed. The available, existing remedy is found in the ability of a court in section 2924g, subdivision (c)(l)(A), to postpone the sale until there has been compliance with section 2923.5." *Skov v. U.S. Bank Nat'l Assn.*, 207 Cal.App.4th 690, 698 (2012).

De Vico alleges that defendants failed to comply with Civil Code § 2923.5, which requires that a lender contact a delinquent borrower to explore options for avoiding foreclosure.[24] He asserts that defendants did not have an actual dialogue with him to explore alternatives to foreclosure before taking steps to hold a foreclosure sale.[25] He contends defendants failed to provide him with information they were required to provide, such as the Housing and Urban Development telephone number.[26] De Vico has adduced evidence concerning these allegations in the form of his declaration, in which he states that "[a]t no time did any GMAC, or any other defendant or entity for that matter, contact me at any time to explore 'alternatives to foreclosure' as required by section 2923.5."[27]

De Vico attached to his motion the notice of default and election to sell under deed of trust prepared by ETS Services. This document notified De Vico of his rights and obligations while

---

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]Declaration of Robert De Vico ("De Vico Decl."), Docket No. 17 (Oct. 9, 2012).

his property was in foreclosure and informed him of the amount remaining on his mortgage.[28]   At the end of the document is the following statement: "The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil [C]ode Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5."[29]   The document is signed by Jennifer Esteban, an agent for ETS Services.[30]   This suggests that defendants fulfilled their obligations under § 2923.5 prior to initiating foreclosure proceedings.

In *Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 2654093 (N.D. Cal. July 6, 2011), the court addressed a similar conflict in the evidence in the context of a preliminary injunction motion.. *Id.* at *3. Plaintiff had submitted a declaration stating: "Suntrust never contacted me in person or by telephone to explore my options to avoid foreclosure prior to the recordation of [the] Notice of Default." Suntrust, conversely, argued that the plaintiff "was in fact contacted in accordance with § 2923.5(a) – pointing to the § 2923.5 declaration attached to the notice of default." *Id.* The court determined that "[w]hile the declarations arguably are in equipoise, the failure of Suntrust to provide anything beyond the declaration (which simply tracks the language of the statute) is problematic." *Id* at *4. Accordingly, it determined that plaintiff "ha[d] raised at least a serious question whether Suntrust violated § 2923.5," and entered a preliminary injunction postponing the foreclosure sale. *Id.* at *4.

The situation here mirrors that in *Tamburri*; De Vico proffers a declaration stating that he was not contacted prior to receiving the notice of default; the only evidence to the contrary is the declaration included in the notice of default that recites compliance with § 2923.5. Based on the language of the declaration, the individual who signed it offered only a hearsay report that the beneficial owner or its agent had made contact with De Vico. Defendants proffer no other evidence that they contacted De Vico as required by § 2923.5 prior to initiating foreclosure. As

---

[28] *Id.*, Exh. D.

[29] *Id.*

[30] *Id.*

9

a result, De Vico has raised serious questions as to whether defendants failed to satisfy their obligation under § 2923.5.  See *Pey v. Wachovia Motrg. Corp.*, No. 11-2922 SC, 2011 U.S. Dist. LEXIS 131699, *27 (N.D. Cal. Nov. 15, 2011) ("whether Defendants attached a declaration to the Notice of Default as required by section 2923.5(b) has no bearing on whether they actually complied with the requirements of section 2923.5(a) by contacting Pey or exercising due diligence in an attempt to contact him.  Defendants cannot prove compliance with § 2923.5 simply by pointing to a declaration on the Notice of Default"); *Paik v. Wells Fargo Bank, N.A.*, No. C 10–04016 WHA, 2011 WL 109482 (N.D. Cal. Jan. 13, 2011) (finding a likelihood of success on the merits of a § 2923.5 claim because "the dearth of evidence from defendant, in the face of plaintiff's clear statement to the contrary that defendants did not contact her to notify her of her rights prior to the recording of the notice of default, speaks volumes").  Consequently, the court finds that De Vico satisfied his burden of showing a likelihood of success on the merits of his claim that defendants violated § 2923.5.[31]

### C.    The Likelihood That Plaintiff Will Suffer Irreparable Harm

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; she must demonstrate that irreparable injury is "likely" in the absence of preliminary relief.  *Winter*, 555 U.S. at 22; *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) see also 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995) (an applicant must demonstrate that in the absence of preliminary relief, she "is likely to suffer irreparable harm before a decision on the merits can be rendered").

It is not enough that the claimed harm be irreparable; it must be imminent as well.

---

[31]As De Vico shown a sufficient likelihood of success on the merits of his § 2923.5 claim, and as this claim was the primary focus of his application, the court declines to address his likelihood of success on the remaining claims in his complaint.  *Tamburri*, 2011 WL 2654093 at *3 ("While Ms. Tamburri has raised various claims in her complaint, her papers focus on only two claims – i.e., the claims for violation of California Civil Code § 2923.5 and for violation of § 2932.5.  Accordingly, the Court shall consider only those claims in determining whether a preliminary injunction should issue").

1   *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988); *Los Angeles*

2   *Mem'l Coliseum v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). "[E]stablishing

3   a threat of irreparable harm in the indefinite future is not enough." *Amylin Pharm., Inc. v. Eli*

4   *Lilly and Co.*, 456 Fed. Appx. 676, *3 (9th Cir. Oct. 31, 2011) (Unpub. Disp.); see also *Cal.*

5   *Dump Truck Owners Ass'n v. Nichols*, No. 11–cv–00384–MCE–GGH, 2012 WL 273162, *3

6   (E.D. Cal. Jan. 30, 2012) (quoting *Amylin*). Speculative injury does not constitute irreparable

7   injury sufficient to warrant granting a preliminary injunction. *Carribean Marine Servs.,* 844 F.2d

8   at 674 (citing *Goldie's Bookstore, Inc. v. Super. Ct.,* 739 F.2d 466, 472 (9th Cir.1984)).

9       "A plaintiff must do more than merely allege imminent harm . . . ; a plaintiff must

10  *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."

11  *Caribbean Marine Servs.*, 844 F.2d at 674 (9th Cir.1988) (emphasis original). She must do so

12  by presenting probative evidence. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d

13  1470, 1473 (9th Cir.1985) (reversing the entry of a preliminary injunction because the movant

14  failed to proffer evidence of irreparable harm); *Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*,

15  No. C–94–0235, 1994 WL 125173, *3 (N.D. Cal. Mar. 31, 1994) (denying a motion for

16  preliminary injunction because the movant failed to adduce sufficient evidence of the threat of

17  irreparable harm). Conclusory affidavits are insufficient to demonstrate irreparable harm. *Am.*

18  *Passage Media Corp.*, 750 F.2d at 1473.

19      De Vico has sufficiently demonstrated the threat of imminent, irreparable injury, since his

20  house is scheduled to be sold on the day after the hearing on this motion.[32] Several courts have

21  determined that the loss of one's residence through foreclosure constitutes irreparable injury. See

22  *Demarest v. Quick Loan Funding, Inc,* No. CV09-01687 MMM (SSx), 2009 WL 940377, *9

23  (C.D. Cal. April 6, 2009) ("The loss of one's personal residence due to foreclosure constitutes

24  irreparable injury"); *Nichols v. Deutsche Bank Nat. Trust Co.*, No. 07cv2039-L(NLS), 2007 WL

25  4181111, *3 (S.D. Cal. Nov. 21, 2007) ("The imminent foreclosure of Plaintiff's residence

26

27      ───────────────

28  [32]Application at 3. Defendants do not dispute that De Vico faces a threat of irreparable harm.

presents a threat of irreparable harm").  Because defendants will almost certainly proceed with the trustee's sale if not enjoined, and the sale is scheduled to occur immediately, De Vico has demonstrated a likelihood of imminent and irreparable harm.

### D.    The Balance of Hardships

In balancing the equities, the court must evaluates the interim harm defendants are likely to sustain if the injunction is granted, and compare it with the harm plaintiff is likely to suffer if an injunction does not enter.  *Winter*, 555 U.S. at 24.  Although De Vico does not address the balance of hardships in his application, it is clear that this factor weighs in his favor.  He has established that he will suffer imminent, irreparable injury if the injunction is denied in that he will lose his residence.  While defendants will be unable to recoup any of the debt allegedly owed them if enjoined from selling the residence, that harm does not outweigh, or begin to approach, the type of harm De Vico would suffer if the sale proceeds.  Moreover, given the narrow basis for the finding of likelihood of success, as soon as defendants comply with § 2923.5, or adduce evidence that they have previously complied, the court will lift the injunction.[33]  Thus, any delay may be short-lived.  Consequently, the court finds that the balance of hardships tips sharply in De Vico's favor.  See *Demarest*, 2009 WL 940377 at *9 ("In addition, the balance of hardships strongly favors plaintiff.  Plaintiff will lose her home if an injunction does not issue.  By contrast, defendants identify no serious hardship they will suffer if the trustee's sale is delayed until resolution of this matter").

### E.    The Public Interest

Neither party addresses whether entry of an injunction would be in the public interest. There are sound reasons public policy reasons for issuing or declining to issue an injunction.  See *Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1097-98 (6th Cir. 2001) ("Plaintiff suggests that public policy seeks to protect consumers from wrongful foreclosures on property, and that the public interest favors the integrity of

---

[33]This would not, of course, preclude De Vico from seeking a further injunction on other grounds.

securities markets.  Allowing Defendants to take a position contrary to the representations of the offering circular could, Plaintiff argues, contravene the public interest in the securities markets. Defendants contend that public policy favors the enforcement of contracts according to their terms. Defendants further contend that enjoining foreclosure would destabilize faith in mortgage notes creating security interests in real estate financing.  We agree with the district court that all of these policy arguments are valid and strong, and that, overall, the arguments favor neither Plaintiff nor Defendants").

In the specific context of this case, however, the court finds that it is in the public interest to allow the borrower an opportunity to be heard.  See *Paik*, 2011 WL 109482 at *5 ("This would not be the first time that a bank shirked its legal responsibilities to aid a struggling borrower trying to pay back her loan.  It is in the public interest to allow such borrowers a full and fair opportunity to show that they were not given all the benefits that the law afforded when they make a preliminary showing that something was amiss"); *Sencion v. Saxon Mortg. Servs., LLC*, No. 5:10–cv–3108 JF, 2011 WL 1364007, *3 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes"); *Naderski v. Wells Fargo Bank, N.A.*, No. CV 11–1783 CAS (CWx), 2011 WL 1627161, *2 (C.D. Cal. Apr. 25, 2011) (noting that "[t]he public interest . . . weighs in favor of preventing the wrongful foreclosure of individuals' property"); *Dumas v. First Northern Bank*, No. CIV. S–10–1523 LKK/DAD, 2011 WL 567358, *2 (E.D. Cal. Feb. 15, 2011) (stating that "[i]t is in the public interest to require lenders to comply with the California statutes enacted to protect homeowners from unnecessary foreclosures").  The public is benefitted by ensuring that banks honor their statutory obligations and explore options to avoid foreclosure with borrowers as required by § 2923.5.  Because, as noted, there are at least serious questions going to the merits of De Vico's arguments under § 2923.5, the public interest favors entry of a preliminary injunction.

### F.    Conclusion Regarding Preliminary Injunction

De Vico has established that there are serious questions concerning the merits of his allegations regarding § 2923.5.  He has also shown that he will suffer imminent and irreparable

1   injury in the absence of an injunction.  The balance of hardships tips strongly in his favor, and the

2   public interest favors entry of an injunction here.  Consequently, the court will enter an injunction

3   precluding defendants from proceeding with the sale at foreclosure of De Vico's residence until

4   such time as they proffer evidence that they have actually complied with Civil Code § 2923.5.

5          **G.    Bond**

6          The final issue the court must address is whether De Vico should be required to post a

7   bond, and, if so, in what amount.  See FED.R.CIV.PROC. 65(c) ("The court may issue a

8   preliminary injunction or a temporary restraining order only if the movant gives security in an

9   amount that the court considers proper to pay the costs and damages sustained by any party found

10  to have been wrongfully enjoined or restrained").  Defendants assert that De Vico should be

11  required to post a bond of "no less that $589,648.46, which is equal to the amount of the unpaid

12  balance" and their foreclosure expenses.[34]  This is excessive.  Rather, the court concludes that De

13  Vico should be required to post a bond equal to the fair market rental value of his property.  See

14  *Tamburri*, 2011 WL 2654093 at *6 ("The Court finds that a bond in the amount of $2,000 per

15  month [is] appropriate. It approximates the fair rental value of the property as well as a fair rate

16  of return on $525,000, the current value of the property").  Bond is particularly appropriate here

17  as De Vico has been living in his residence without making payments since November 2010,[35] and

18  has represented that he has the ability to tender the full amount of his debt once the beneficial

19  owner of the note is determined.[36]  See *Magana v. Wells Fargo Bank, N.A.*, No. C 11–03993 CW,

20  2011 WL 4948674, *2 (N.D. Cal. Oct. 18, 2011) ("Taking into account the circumstances,

21  including but not limited to the fact that over the past two years, Plaintiff has continued living at

22  the real property at issue without making any payments to Defendants, the Court finds that a bond

23  in the amount of $3,000 per month, the approximate fair rental value of the house and an amount

24  that Plaintiff had previously represented that she could afford to pay, is appropriate").

25  _____

26  [34]Opposition at 12-13.

27  [35]Complaint, ¶ 51.

28  [36]*Id.*, ¶ 94.

Consequently, the court grants De Vico's request for a preliminary injunction on the condition that he must pay a bond in the amount of $3,000 per month, beginning on October 30, 2012.

### III. CONCLUSION

For the reasons stated, plaintiff's application for a preliminary injunction is granted provided that he pays, no later than October 30, 2012, and on the first of each month thereafter, a bond in the amount of $3,000. This bond condition can be satisfied by depositing the required amount in the trust account of defendants' attorneys. The first payment must be made on or before 10:00 a.m. on October 30, 2012. If the $3,000 payment is made prior to that time, and De Vico so advises the court, it will enter a preliminary injunction. If the payment is not made, the court will not enter an injunction.

Once defendants provide proof that they have complied with Civil Code § 2923.5, the court will dissolve the preliminary injunction. The injunction will also be dissolved upon submission of evidence that De Vico has not made a required payment on the bond. Such proof must describe specifically the nature of the contact with De Vico and the manner in which the parties' discussion explored options to avoid foreclosure.

DATED: October 29, 2012

Margaret M. Morrow
_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

15